676 F.2d 434
 Alvin Bernard FORD, Petitioner,
v.
Charles G. STRICKLAND, Jr., Warden, Florida State Prison;
Louie L. Wainwright, Secretary, Department of Offender
Rehabilitation, State of Florida; Jim Smith, Attorney
General, State of Florida, Respondents.
 No. 81-6200.
 United States Court of Appeals,
Eleventh Circuit.
 April 15, 1982.
Rehearing Granted April 28, 1982.
 
 Richard H. Burr, III, Nashville, Tenn., Marvin E. Frankel, New York City, for petitioner.
 Joy B. Shearer, Asst. Atty. Gen., W. Palm Beach, Fla., for respondents.
 Appeal from the United States District Court for the Southern District of Florida.
 Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN*, District Judge.
 RONEY, Circuit Judge:
 
 
 1
 Alvin Bernard Ford was charged with shooting a wounded policeman in the back of the head at close range while fleeing from an armed robbery. Convicted of murder, Ford was sentenced to death in Florida. He appeals the denial of a petition for writ of habeas corpus alleging essentially seven contentions: (1) improper admission of an oral confession; (2) failure of the Florida Supreme Court to require resentencing when it found three of the statutory aggravating circumstances unsupported by the evidence; (3) improper state trial court instructions on mitigating circumstances; (4) failure of the Florida death law to require a finding that aggravating circumstances must outweigh mitigating circumstances beyond a reasonable doubt; (5) failure of the Florida Supreme Court to apply a consistent standard of reviewing the aggravating and mitigating circumstances in the case; (6) ineffective assistance of counsel at sentencing; and (7) review by the Florida Supreme Court of nonrecord materials in death cases, the so-called Brown issue. After examining each of these contentions carefully, we affirm the denial of the writ of habeas corpus.
 
 
 2
 Briefly, the facts giving rise to petitioner's conviction and sentence are as follows. On the morning of July 21, 1974, Ford and three accomplices entered a Red Lobster Restaurant in Fort Lauderdale, Florida, to commit an armed robbery. During the course of the robbery, two people escaped from the restaurant. Fearing police would soon arrive, petitioner's accomplices fled. Ford remained to complete the theft of approximately $7,000 from the restaurant's vault.
 
 
 3
 Officer Dimitri Walter Ilyankoff arrived on the scene. Petitioner allegedly shot him twice in the abdomen and, apparently realizing his accomplices had abandoned him, ran to the parked police car. Because there were no keys in the car, Ford ran back to the struggling, wounded officer. Petitioner asked Officer Ilyankoff for the keys and then allegedly shot him in the back of the head at close range. Ford took the keys and made a high speed escape.
 
 
 4
 Petitioner was convicted in Circuit Court, Broward County, Florida, of first degree murder. In accordance with the jury's recommendation, the trial judge sentenced him to death. On direct appeal, both the conviction and sentence were affirmed. Ford v. State, 374 So.2d 496 (Fla.1979). The United States Supreme Court denied Ford's petition for writ of certiorari. Ford v. Florida, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980).
 
 
 5
 Petitioner thereafter joined with 122 other death row inmates in filing an application for extraordinary relief and petition for writ of habeas corpus in the Florida Supreme Court. The petitioners challenged the court's practice of receiving nonrecord information in connection with review of capital cases. The Florida Supreme Court dismissed the petition, Brown v. Wainwright, 392 So.2d 1327 (Fla.1981), and the United States Supreme Court denied certiorari, Brown v. Wainwright, --- U.S. ----, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981).
 
 
 6
 Ford then filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure and applied for a stay of execution. Relief was denied. Ford v. State, 407 So.2d 907 (Fla.1981).
 
 
 7
 Finally, petitioner filed a petition for writ of habeas corpus under 28 U.S.C.A. § 2254 in the United States District Court for the Southern District of Florida. The district court denied relief, and we granted a stay of execution so that the issues raised could be reviewed on appeal.
 
 I.
 Admission of Ford's Oral Confession
 
 8
 Ford was arrested in Gainesville, Florida on the day of the murder. He refused to talk with Gainesville police officers, indicating he first wanted to consult a lawyer. He was given an opportunity to talk to a public defender, but refused to accept that representation. He was unable to reach his private attorney.
 
 
 9
 Fort Lauderdale police officers came to return Ford to Fort Lauderdale. The Miranda warnings were given and petitioner "wanted" to talk but would not give a written statement until he had contacted his lawyer. Petitioner's only statement at the time was "I didn't shoot that cop." On a small plane from Gainesville to Fort Lauderdale, another officer gave Ford Miranda warnings. Ford said he was willing to talk but would give no written statement until he had talked with his lawyer. After informing a Fort Lauderdale officer of his earlier unsuccessful effort to contact his attorney and his refusal of representation by the public defender, petitioner admitted participating in the Red Lobster robbery. Although denying participation in the killing, he admitted being left behind at the Red Lobster by his accomplices, seeing a police officer lying on the ground as he left the restaurant, and escaping in the police car which he abandoned for a green Volkswagen.
 
 
 10
 Ford claims admission of the above statement in his trial violated the Fifth, Sixth and Fourteenth Amendments and was contrary to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, including United States v. Priest, 409 F.2d 491 (5th Cir. 1969),[1] and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). He argues that having invoked without waiving his right to counsel, his responses to subsequent police-initiated custodial interrogation without an attorney should not have been admitted into evidence.
 
 
 11
 Petitioner moved to suppress his confession, but failed to appeal the trial court's denial of his motion on direct appeal to the Florida Supreme Court. Based on Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the district court held Ford's failure to raise the issue on direct state appeal forecloses its consideration in this habeas corpus proceeding.
 
 
 12
 The Florida procedural law is clear. A criminal defendant's failure to raise an issue which could be asserted on direct appeal precludes consideration of the issue on a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. Hargrave v. State, 396 So.2d 1127 (Fla.1981). Accordingly, the state courts refused to consider this contention concerning the confession.
 
 
 13
 In Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Supreme Court held a state prisoner who knowingly and deliberately bypasses state procedures intentionally relinquishes known rights and can be denied habeas corpus relief on that basis. Recognizing Fay left open the possibility of "sandbagging" by defense lawyers, the Supreme Court narrowed its sweeping rule in Wainwright v. Sykes, 433 U.S. 72, 89, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977). The Court held that absent a showing of both cause for noncompliance and actual prejudice, habeas corpus relief is barred where a state prisoner has failed to comply with a state contemporaneous objection rule. 433 U.S. at 87, 97 S.Ct. at 2506.
 
 
 14
 While Sykes arose in the context of a procedural default at the trial level, we have applied its rationale in cases involving a procedural default during the course of a direct appeal from a state court conviction. See Huffman v. Wainwright, 651 F.2d 347 (5th Cir. 1981); Evans v. Maggio, 557 F.2d 430, 433-34 (5th Cir. 1977). Other circuits have applied Sykes in the same fashion. See Forman v. Smith, 633 F.2d 634, 640 (2d Cir. 1980); Cole v. Stevenson, 620 F.2d 1055 (4th Cir. 1980); Gibson v. Spalding, 665 F.2d 863, 866 (9th Cir. 1981). Applying Sykes in this setting accrues the dual advantage of discouraging defense attorneys from omitting arguments in preparing appeals with the intent of saving issues for federal habeas corpus consideration and encouraging state appellate courts to strictly enforce procedural rules, thereby reducing the possibility the federal court will decide the constitutional issue without the benefit of the state's views. Gibson v. Spalding, 665 F.2d at 866; Wainwright v. Sykes, 433 U.S. at 90, 97 S.Ct. at 2508. Additionally, application of Sykes to the forfeiture of specific claims on appeal promotes the goals of comity and accuracy identified by the Sykes Court. Forman v. Smith, 633 F.2d at 639.
 
 
 15
 Thus, in this Circuit a state prisoner can forego the opportunity to raise constitutional issues in habeas corpus proceedings by deliberately bypassing state appellate procedural rules or by merely failing to follow them without showing both cause for the default and prejudice resulting from it. Because this record does not reveal Ford's procedural default was the result of an intentional bypass within the meaning of Fay, we turn to the cause and prejudice exception of Sykes.
 
 
 16
 Cause and prejudice are sometimes interrelated. Huffman v. Wainwright, 651 F.2d at 351. While the Supreme Court has not explicitly defined cause and prejudice, our precedents have defined "cause" sufficient to excuse a procedural default in light of the determination to avoid "a miscarriage of justice." Id. Prejudice means "actual prejudice" which in this case must result from the failure to appeal the trial court's admission of petitioner's statement. See Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); Buckelew v. United States, 575 F.2d 515, 519 (5th Cir. 1978).
 
 
 17
 A careful review of the record reveals the Sykes exception does not apply in this case. Ford's argument that the procedural default is excused because of the position of Florida courts at the time on the issue must fail. The claim was perceived and asserted in the trial court, and therefore could have been asserted on appeal. Engle v. Isaac, --- U.S. ----, 102 S.Ct. 1558, 71 L.Ed.2d ---- (1982).
 
 
 18
 If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid. Allowing criminal defendants to deprive the state courts of this opportunity would contradict the principles supporting Sykes.
 
 
 19
 --- U.S. at ----, 102 S.Ct. at 1572 (footnotes omitted).
 
 
 20
 Even addressed in terms of manifest injustice, see Huffman v. Wainwright, 651 F.2d 347 (5th Cir. 1981), under the circumstances of this case, imposition of the Sykes forfeiture rule does not constitute a miscarriage of justice. Petitioner does not contest the accuracy of the statement made to the Fort Lauderdale police. The statement admitted only presence and participation in the robbery; it denied participation in the shooting. The Florida Supreme Court, in discussing effectiveness of counsel, concluded and we agree that "(t)here was abundant evidence apart from the confession, some by eyewitnesses, to place him at the scene as a participant." Ford v. State, 407 So.2d at 909.
 
 II.
 
 21
 Failure to Require Resentencing When Evidence Insufficient
 
 
 22
 on Some Aggravating Circumstances
 
 
 23
 After receiving instructions on the eight aggravating circumstances under Fla.Stat. § 921.141, Ford's jury recommended the death penalty. Finding evidentiary support for all eight aggravating circumstances, the judge sentenced petitioner to death. On appeal, the Florida Supreme Court ruled three of the eight did not apply because two lacked evidentiary support and one was based on the same aspect of the crime as another circumstance. Ford v. State, 374 So.2d 496, 501-03 (Fla.1979). The court upheld the five other aggravating circumstances, specifically finding the killing "especially heinous, atrocious, or cruel." Id. at 503. In the absence of any mitigating circumstances, death was presumed the appropriate penalty and the sentence was affirmed. Id.
 
 
 24
 Petitioner argues that Henry v. Wainwright, 661 F.2d 56 (5th Cir. 1981), and Stephens v. Zant, 631 F.2d 397 (5th Cir. 1980), reh. denied and modified, 648 F.2d 446 (5th Cir. 1981), cert. granted, --- U.S. ----, 102 S.Ct. 90, 71 L.Ed.2d 82 (1981), require resentencing under the above circumstances.
 
 
 25
 In Stephens the Georgia Supreme Court had held unconstitutional one of the statutory aggravating circumstances presented to the jury. We held that the death sentence must be set aside because it was impossible to tell from the record the extent to which the Georgia jury had relied on an unconstitutional statutory aggravating factor in imposing the death penalty. Stephens v. Zant, 631 F.2d at 406. In Henry, we held the trial court committed constitutional error in admitting into evidence and permitting the jury to consider evidence of nonstatutory aggravating circumstances. Henry v. Wainwright, 661 F.2d at 60. These two cases are inapposite to the case at bar.
 
 
 26
 The instant case involves consideration of neither unconstitutional nor nonstatutory aggravating factors. That evidence was insufficient to support two circumstances and one circumstance was based on the same aspect of the crime as another does not compel the conclusion that the death sentence was unconstitutionally infected by consideration of extraneous evidence. The sentencing jury and judge considered only evidence of factors which could properly be considered by them. Where, as here, there were no statutory mitigating circumstances and the sentencer has considered only constitutional statutory aggravating circumstances, we perceive no reversible error where properly found statutory aggravating circumstances sufficiently support the sentence. The Florida Supreme Court's review has achieved the goals of rationality, consistency and fairness required under Proffitt v. Florida, 428 U.S. 242, 258-60, 96 S.Ct. 2960, 2969-70, 49 L.Ed.2d 913 (1976), and Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
 
 
 27
 Neither did the trial court commit constitutional error in instructing the jury as to all aggravating and mitigating circumstances permitted by the statute. To assure the jury understands the structure of the law as required by Proffitt, it seems appropriate that they be charged fully on the Florida statute, provided proper instructions on the burden of proof and the standard of evidence required to prove the factors are given.
 
 III.
 Instructions on Mitigating Circumstances
 
 28
 Instructing the jury on aggravating circumstances, the trial judge stated, "you shall consider only the following ...," and read the statutory language. With regard to mitigating circumstances, he said, "you shall consider the following ...," again reading the appropriate statutory language. Ford neither objected to the instruction at trial nor raised it on direct appeal.
 
 
 29
 Relying primarily on Washington v. Watkins, 655 F.2d 1346 (5th Cir. 1981), petitioner argues the above instructions improperly limited the jury's consideration to statutory mitigating factors and precluded consideration of nonstatutory mitigating factors contrary to Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Lockett held "the sentencer ... (must) not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that defendant proffers as a basis for a sentence less than death." 438 U.S. at 604, 98 S.Ct. at 2964.
 
 
 30
 With reference to aggravating circumstances, the Mississippi trial court in Washington instructed the jury to "consider only the following elements ...." As to mitigating circumstances, the judge stated, "consider the following elements ...." Washington v. Watkins, 655 F.2d at 1367. The state court concluded:
 
 
 31
 If you unanimously find from the testimony that one or more of the preceding elements of mitigation exist(s), then you must consider whether it outweighs the aggravating circumstances you previously found and you must return one of the following verdicts....
 
 
 32
 Id. at 1368 (emphasis added).
 
 
 33
 Reasoning that in determining whether aggravating outweighed mitigating factors jurors might have believed it was their sworn duty to consider only the two statutory mitigating circumstances enumerated in the charge, the Fifth Circuit reversed Washington's death sentence.
 
 
 34
 In evaluating the state court's instructions, we must pay careful attention to the words actually spoken to the jury to determine the interpretation a reasonable juror might give the instruction in question. Sandstrom v. Montana, 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979). The entire charge must be examined as a whole to discern whether the issues and law presented to the jury were adequate. Davis v. McAllister, 631 F.2d 1256, 1260 (5th Cir. 1980), cert. denied, 452 U.S. 907, 101 S.Ct. 3035, 69 L.Ed.2d 409. Where some deficiency exists in the language of the charge taken as a whole, it must be shown that it so infected the entire trial process that a due process violation occurred. Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); Washington v. Watkins, 655 F.2d at 1369.
 
 
 35
 Evaluating the jury charge in this case under the foregoing standard, we reject Ford's contention. While the instructions in Washington and the instant case involve similar use of the term "only," there are significant differences. Petitioner's jury was read the entire list of statutory mitigating circumstances and was not confined to two "preceding elements of mitigation," an important factor to the court's decision in Washington. 655 F.2d at 1370. More importantly, the sentencing judge's order which stated "(t)here are no mitigating circumstances existing-either statutory or otherwise-which outweigh any aggravating circumstances" reflects his consideration of the nonstatutory mitigating evidence offered by Ford. The Florida statute does not restrict a jury's consideration of mitigating circumstances to those listed in the statute. It is reasonable to conclude the state trial judge's perception that nonstatutory mitigating factors could be considered was conveyed to the advisory jury. The language about which petitioner complains did not so "infect" the entire sentencing process as to present a due process violation.
 
 IV.
 
 36
 Standard by Which Aggravating Circumstances Must Outweigh
 
 Mitigating Factors
 
 37
 Florida Statute § 921.141(3)(b) requires the sentencing court, in imposing the death penalty, to state in writing its finding "(t)hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances." Petitioner contends that because the statute, case law and jury instructions do not require the state to prove that aggravating factors outweigh mitigating factors "beyond a reasonable doubt," Florida's death penalty statute, on its face and as applied in this case, denies convicted capital defendants due process. Ford argues that the crime of capital murder in Florida includes the element of mitigating circumstances not outweighing aggravating circumstances, and that the capital sentencing proceeding in Florida involves new findings of fact significantly affecting punishment. Since the element is part of the crime, he asserts that the beyond a reasonable doubt standard is required by In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and its progeny. We reject this argument for several reasons.
 
 
 38
 First, that the mitigating must outweigh aggravating factors for imposition of the death penalty under the Florida statute is not an element of the crime of capital murder in Florida. Under the Florida bifurcated death penalty statute, the sentencing proceeding is entirely separate from trial on the capital offense. Indeed, in certain circumstances the state judge can summon different jurors for the latter phase. Fla.Stat. § 921.141(1). Guilt of the capital offense having already been decided, the sentencing jury's sole function is to render an advisory sentence aiding the state judge in determining whether the defendant should be sentenced to death or life imprisonment. Id. Thus, that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," In re Winship, 397 U.S. at 364, 90 S.Ct. at 1072 (emphasis added), is irrelevant to deciding under the Florida statute whether there are insufficient mitigating circumstances to outweigh aggravating circumstances. The aggravating and mitigating circumstances are not facts or elements of the crime. Rather, they channel and restrict the sentencer's discretion in a structured way after guilt has been fixed. As the Supreme Court explained:
 
 
 39
 While the various factors to be considered by the sentencing authorities do not have numerical weights assigned to them, the requirements of Furman are satisfied when the sentencing authority's discretion is guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition.
 
 
 40
 Proffitt v. Florida, 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976).
 
 
 41
 Second, the United States Supreme Court has declared constitutional on its face Florida's capital sentencing procedure, including its weighing of aggravating and mitigating circumstances. The Supreme Court stated:
 
 
 42
 The directions given to judge and jury by the Florida statute are sufficiently clear and precise to enable the various aggravating circumstances to be weighed against the mitigating ones. As a result, the trial court's sentencing discretion is guided and channeled by a system that focuses on the circumstances of each individual homicide and individual defendant in deciding whether the death penalty is to be imposed.
 
 
 43
 Proffitt v. Florida, 428 U.S. at 258, 96 S.Ct. at 2969. The statute, facially constitutional, was strictly applied according to its terms.
 
 
 44
 Third, Ford's argument under In re Winship seriously confuses proof of facts and the weighing of facts in sentencing. While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9 (Fla.1973), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party. Petitioner's contrary suggestion is based on a misunderstanding of the weighing process, the statute and the guiding and channeling function identified in Proffitt v. Florida, 428 U.S. at 258, 96 S.Ct. at 2969. Indeed, it appears no case has applied In re Winship in the manner Ford urges. The North Carolina and Utah cases cited by him which imposed a reasonable doubt standard in this situation turned on construction of state statutes rather than the due process rationale of In re Winship. See State v. Johnson, 257 S.E.2d at 617, and State v. Woods, --- P.2d ---- (1981) (No. 16486, Sept. 21, 1981).
 
 
 45
 Ford's alternate argument, raised for the first time in his reply brief, is that the Florida capital sentencing proceeding involves new findings of fact significantly affecting punishment to which the full panoply of due process rights should be extended, including the requirement that the state prove beyond a reasonable doubt that mitigating factors outweigh aggravating factors. Again petitioner confuses proof of facts with the weighing process undertaken by the sentencing jury and judge. Because the latter process is not a fact susceptible of proof under any standard, we reject this contention.
 
 V.
 Florida Supreme Court's Standard of Review
 
 46
 Ford claims the Florida Supreme Court, in reviewing the evidence of aggravating and mitigating circumstances, violated the Eighth Amendment by failing to apply in his case the same standard of review applied in other capital cases. Specifically, he contends that under Florida case law, the court should have set aside two aggravating circumstances, collapsed two aggravating circumstances into one, and found the existence of one statutory mitigating circumstance and nonstatutory mitigating circumstances.
 
 
 47
 While petitioner characterizes this contention as the Florida Supreme Court's failure to apply a consistent standard of review, the district court correctly discerned that he is simply "quarreling" with the state court. Where in a capital punishment case the state courts have acted through a properly drawn statute with appropriate standards to guide discretion, Proffitt v. Florida, 428 U.S. at 258-59, 96 S.Ct. at 2969, federal courts will not undertake a case-by-case comparison of the facts in a given case with the decisions of the state supreme court. Spinkellink v. Wainwright, 578 F.2d 582, 604-05 (5th Cir. 1978). This rule stands even though were we to retry the aggravating and mitigating circumstances in these cases, "we may at times reach results different from those reached in the Florida state courts." Id. at 605.
 
 
 48
 The Supreme Court of Florida is the ultimate authority on Florida law and we do not sit to question its interpretation of that State's statutes. See Stephens v. Zant, 631 F.2d at 405-06. Ford has not cited and we have not found any habeas corpus decision in which this Court has reversed a death sentence due to the state court's incorrect decision as to the existence or absence of aggravating and mitigating circumstances.
 
 
 49
 Moreover, examination of the relevant Florida Supreme Court decisions reveals that its review of petitioner's death sentence was not arbitrary, capricious or in disaccord with the constitutional principles relating to sentencing in capital cases. Under 28 U.S.C.A. § 2254(d), we presume correct facts properly found by the state courts. Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), after remand, --- U.S. ----, 102 S.Ct. 1303, 71 L.Ed.2d ---- (1982). There is nothing in this record to show the Florida Supreme Court failed to apply the standard of review mandated by Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its progeny.
 
 VI.
 Assistance of Counsel at Sentencing
 
 50
 Petitioner contends he received ineffective assistance of counsel at sentencing. Specifically he claims that although counsel called character witnesses and a psychiatrist to testify in mitigation, he "failed to focus the trial judge's and jury's attention on the critical factors relevant to the sentence determination." Careful review of the record and Ford's specific arguments reveals this contention is nothing more than an attack on the reasoned tactics and strategy of experienced trial counsel.
 
 
 51
 On reviewing ineffective assistance of counsel claims, we do not sit to second guess considered professional judgments with the benefit of 20/20 hindsight. Washington v. Watkins, 655 F.2d at 1355; Easter v. Estelle, 609 F.2d 756 (5th Cir. 1980). We have consistently held that counsel will not be regarded constitutionally deficient merely because of tactical decisions. See United States v. Guerra, 628 F.2d 410 (5th Cir. 1980), cert. denied, 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 369 (1981); Buckelew v. United States, 575 F.2d 515 (5th Cir. 1978); United States v. Beasley, 479 F.2d 1124, 1129 (5th Cir.), cert. denied, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973); Williams v. Beto, 354 F.2d 698 (5th Cir. 1965). That an attorney's strategy may appear wrong in retrospect does not automatically mandate constitutionally ineffective representation. Baty v. Balkcom, 661 F.2d 391, 395 n.8 (5th Cir. 1981); Baldwin v. Blackburn, 653 F.2d 942, 946 (5th Cir. 1981).
 
 
 52
 That counsel for a criminal defendant has not pursued every conceivable line of inquiry in a case does not constitute ineffective assistance of counsel. Lovett v. Florida, 627 F.2d 706, 708 (5th Cir. 1980). This is not a case in which counsel allegedly failed to adequately prepare and investigate. See Washington v. Strickland, 673 F.2d 879 (5th Cir. 1982). Ford's counsel was reasonably likely to render and did render reasonably effective assistance. Herring v. Estelle, 491 F.2d 125, 127 (5th Cir. 1974). Because the record reveals counsel's representation was constitutionally adequate and there resulted no prejudice to petitioner by any action or inaction of counsel, see Washington v. Watkins, 655 F.2d at 1362, Ford has not carried his burden of proving ineffective assistance of counsel. United States v. Killian, 639 F.2d 206, 210 (5th Cir. 1981).
 
 VII.
 
 53
 The Brown Issue: Nonrecord Material Before the Florida Supreme Court
 
 
 54
 Petitioner alleges the Florida Supreme Court had a practice of receiving nonrecord materials concerning death row inmates during the pendency of the appeal of his death sentence. Ford specifically claims that in his case the Florida Supreme Court reviewed ex parte psychiatric evaluations or contact notes, psychological screening reports, post-sentence investigation reports and state prison classification and admission summaries. This practice, he contends, precluded adversarial testing of the information in violation of his rights to due process of law, effective assistance of counsel, confrontation and reliability and proportionality of capital sentencing. Additionally, he argues the court's receipt of results of psychiatric examinations which were conducted without first informing him of his Fifth Amendment rights violated his privilege against self-incrimination and his right to confer with his attorney before determining whether to submit to them.
 
 
 55
 This issue first surfaced in a petition for writ of habeas corpus directed to the Florida Supreme Court brought on behalf of 122 Florida death row inmates, of which Ford was one. The Court denied the petition with a full opinion. Brown v. Wainwright, 392 So.2d 1327 (Fla.), cert. denied, --- U.S. ----, 102 S.Ct. 542, 71 L.Ed.2d 407 (1981).
 
 
 56
 We reject the contention both generally and specifically as made for Ford. The function of the Supreme Court of Florida in these cases is to review sentences for procedural regularity and proportionality. The court does not "impose" sentence, and for that reason there cannot exist a due process violation under Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1980). As the Florida Supreme Court aptly stated:
 
 
 57
 The record of each proceeding, and precedent, necessarily frame our determinations in sentence review. Our opinions, of course, then expound our analysis. Factors or information outside the record play no part in our sentence review role. Indeed, our role is neither more nor less, but precisely the same as that employed by the United States Supreme Court in its review of capital punishment cases. Illustrative of the Court's exercise of the review function is Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).
 
 
 58
 It is evident, once our dual roles in the capital punishment scheme are fully appreciated, that non-record information we may have seen, even though never presented to or considered by the judge, the jury, or counsel, plays no role in capital sentence "review." That fact is obviously appreciated by the United States Supreme Court, for it very carefully differentiated the sentence "review" process of appellate courts from the sentence "imposition" function of trial judges in Proffitt and Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
 
 
 59
 Brown v. Wainwright, 392 So.2d at 1332-33. We view the court's statement in Brown that such material would be irrelevant to its ultimate decision in these cases correct as a description of its function and as a statement of law. Of course, review of the records in other cases is necessarily involved in achieving the United States Supreme Court's requirement of consistency and proportionality.
 
 
 60
 Specifically we reject the claim for three reasons. First, there is not an iota of evidence in this record to indicate the Florida Supreme Court viewed any extra-record materials in affirming petitioner's conviction and sentence. The court's reviewing such information in connection with death row inmates other than Ford would not render his death sentence unconstitutional. Thus, discovery on this issue, based solely on Ford's bare, unsupported allegations, would be nothing more than a fishing expedition in which it would be necessary for him to show that in his case the court received, viewed and relied on the information. Since the latter could not be shown in the face of Brown v. Wainwright, we affirm the district court's refusal to permit Ford to launch such a discovery expedition.
 
 
 61
 Second, there is absolutely no indication what material could have been received by the court which was prejudicial. By the specific description of the information set forth in his habeas corpus petition, Ford presumably knows something of the nature of the materials allegedly viewed. He made no effort whatsoever to demonstrate those materials were harmful to his case.
 
 
 62
 Third, in the face of petitioner's unsupported allegations to the contrary, we accord a presumption of correctness to the Florida Supreme Court's statement that its members properly perform their procedural appellate function in reviewing death sentences. See 28 U.S.C.A. § 2254(d); Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), after remand, --- U.S. ----, 102 S.Ct. 1303, 71 L.Ed.2d ---- (1982). In the context of a federal collateral attack on a state criminal conviction, comity and federalism demand no less. As the highest court in the state, the Florida Supreme Court's interpretation of its procedural role is the law of the state and we do not question it. See Stephens v. Zant, 631 F.2d at 405-06.
 
 
 63
 These conclusions do not reflect the view that any court, including an appellate court, should review material extraneous to the record. We do not condone such a practice.
 
 Conclusion
 
 64
 The Court has discussed above the seven issues as framed by petitioner in his brief. Although not required to do so, because of the now usual practice of challenging counsel's effectiveness in later proceedings, we have examined every issue asserted in the petition for writ of habeas corpus. These issues were set forth by headings in the pleadings as follows:
 
 Grounds for Habeas Corpus Relief
 A. Denial of Right to Confront Witnesses
 B. Non-disclosure of Exculpatory Evidence
 C. Denial of Right to Assistance of Counsel
 
 65
 D. Witherspoon Violation of Petitioner's Right to Trial by Fair and Impartial Jury
 
 
 66
 E. Sentencing Phase Instructions to the Jury: Permitting the Arbitrary, Unguided Imposition of the Death Penalty
 
 
 67
 F. Unconstitutional Shifting of the Burden of Proof at the Penalty Phase
 
 
 68
 G. Review by the Florida Supreme Court: Failure to Set Aside Death Sentence Despite the Substantial Erosion of the Basis for the Death Sentence
 
 
 69
 H. Review by the Florida Supreme Court: Failure to Assure the Imposition of the Death Penalty Fairly and Consistently
 
 
 70
 I. The Violation of Mr. Ford's Constitutional Rights by the Practice of the Supreme Court of Florida Reviewing, in Connection with Appeal, Unknown to Mr. Ford or His Counsel, Certain Documents Pertaining to Mr. Ford
 
 
 71
 J. Ineffective Assistance of Counsel: Guilt Phase
 
 
 72
 K. Ineffective Assistance of Counsel: Penalty Phase
 
 
 73
 L. Ineffective Assistance of Counsel: Appeal
 
 
 74
 Many of these grounds were asserted under different nomenclature on this appeal. The ones not raised for review by this Court were wisely abandoned. A review of the entire petition and the district court's decision reveals no grounds upon which relief should be granted in this case. The district court's decision is affirmed on every point considered by it.
 
 
 75
 AFFIRMED.
 
 
 76
 KRAVITCH, Circuit Judge, concurring in part and dissenting in part:
 
 
 77
 Although I concur in Parts I, IV, V, and VI of the majority's opinion, I write separately because I disagree with the majority's resolution of the sentencing issues in Parts II, III, and VII. In my view, Supreme Court and former Fifth Circuit precedent compels a reversal on both the aggravating and mitigating circumstances claims and on the claim that the state court considered extra-record information in reviewing the sentence. Hence I would remand to the Florida courts for resentencing.
 
 
 78
 Effect of Florida Supreme Court's Overruling of Aggravating
 
 Circumstances Found by Trial Court
 
 79
 Petitioner argues that the appellate court erred in affirming his sentence despite its holding invalid three of the aggravating circumstances on which the trial judge had relied in imposing the sentence. As the majority has noted, petitioner relies on Stephens v. Zant, 631 F.2d 397 (5th Cir. 1980), reh. denied and modified, 648 F.2d 446 (5th Cir. 1981), cert. granted, --- U.S. ----, 102 S.Ct. 90, 70 L.Ed.2d 82 (1981),[1] and Henry v. Wainwright, 661 F.2d 397 (5th Cir. 1981). In rejecting petitioner's argument, the majority attempts to distinguish this case from Stephens and Henry on the ground that those cases involved jury consideration of unconstitutional factors while here the initial sentencing error was not of constitutional dimension. Majority Opinion, supra, at 439. The reasoning of those cases does not support this distinction, however.
 
 
 80
 As the majority points out, the trial courts' errors with respect to aggravating factors in Henry and Stephens were constitutional ones.[2] The Fifth Circuit's decision in those cases to remand for resentencing was not predicated on the nature of the trial courts' errors, however. Rather, the court in Stephens and Henry was concerned with the procedural regularity in capital sentencing that Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) held is mandated by the eighth amendment. Furman required that juries' discretion in capital sentencing be guided by objective and rationally reviewable standards. The Fifth Circuit's resolution of the Henry and Stephens cases was based directly on Furman. In addition to the unconstitutional factors considered by the sentencers in those cases, several valid aggravating circumstances had been found. In both cases, the state supreme courts had affirmed the defendants' sentences on the basis of the valid factor alone. See Henry v. Wainwright, 661 F.2d at 57 n.2, 58-59; Stephens v. Zant, 631 F.2d 405. The Fifth Circuit disagreed and held that the defendants were entitled to new sentencing proceedings for two reasons. First, by allowing the jury to consider constitutionally invalid factors, the trial judges had failed to channel the juries' discretion to ensure nonarbitrary sentencing.[3] Second, even though the juries could rationally have recommended the death sentence on the basis of the permissible factors they had considered, there was no way for the court retrospectively to determine whether they would in fact have done so had they been properly instructed. An attempt to second-guess the jury, in the court's view, was not the proper role of the reviewing court but was "the antithesis of the rational review of the jury's application of clear and objective standards contemplated by Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and its progeny."[4]
 
 
 81
 The Fifth Circuit's decision to remand for resentencing in Henry and Stephens does not depend on the status of the sentencer's error as constitutional or statutory but rather concerns the procedure for rectifying that error. The capital sentencing statutes under consideration in those cases had been designed by the state legislatures to meet Furman. As those cases recognized, where a judge or jury disregards or misinterprets the procedures or criteria established by the state's sentencing scheme, the regularity and objectivity in sentencing that the statute is designed to accomplish is defeated. Once such an error has been made, however, there are different possible approaches to correcting it. Henry and Stephens recognized that not all such approaches satisfy Furman 's rational appellate review requirement. They thus rejected the state courts' method. Superimposing on defective sentencing a review procedure under which the appellate court, having identified the sentencer's error, then speculates as to what the sentencer would have done had the error not been made compounds rather than resolves the problem and is clearly inconsistent with Furman. The Supreme Court has also recognized the infirmity of such a review process. Presnell v. Georgia, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978) (per curiam) (imposition of death sentence violated due process where state supreme court rejected jury's grounds for sentence but affirmed sentence on ground that evidence supported theory not relied on by jury). Cf. Eddings v. Oklahoma, --- U.S. ----, ----, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (O'Connor, J., concurring) (where it appears trial judge believed he could not consider mitigating evidence, Court will not speculate as to whether he did consider it but found it insufficient; "Woodson (v. North Carolina, 428 U.S. 280 (96 S.Ct. 2978, 49 L.Ed.2d 944) (1976) ) and Lockett (v. Ohio, 438 U.S. 586 (98 S.Ct. 2954, 57 L.Ed.2d 973) (1978) ) require us to remove any legitimate basis for finding ambiguity concerning the factors actually considered by the court").
 
 
 82
 The posture of this case is identical to, and therefore poses the same problem raised by, Henry and Stephens. The trial judge found that eight statutory aggravating factors and no mitigating factors existed and therefore sentenced petitioner to death.[5] On appeal, the Florida Supreme Court held that the trial judge had erred with respect to several of the aggravating circumstances[6] but upheld petitioner's sentence because "even though there was some error in assessment of some of the statutory aggravating factors, there being no mitigating factors present death is presumed to be the appropriate penalty." Ford v. State, 374 So.2d at 503. By attempting to distinguish this case from Henry and Stephens the majority confuses the requirement of Furman that capital sentencing be structured by procedures and criteria that are rationally reviewable with the requirements of other cases imposing substantive constitutional limitations on such criteria.[7] I do not suggest that every question of statutory interpretation involving capital sentencing criteria necessarily implicates the Federal Constitution. On the contrary, it is the procedure here employed by the state court, and not its substantive decision, that in my view raises a constitutional issue. I would hold only that the rational review requirement of Furman compels resentencing in instances, such as this one, in which the sentencer has misapplied the state's capital sentencing criteria.
 
 Instructions on Mitigating Circumstances
 
 83
 The instructions given to the jury in this case were identical in most critical respects to those held invalid in Washington v. Watkins, 655 F.2d 1346 (5th Cir. 1981).[8] The majority attempts to distinguish Washington on the basis of (1) the concluding reference by the trial judge in Washington to "the preceding elements of mitigation" and (2) the fact that the charge here listed all the statutory elements of mitigation whereas in Washington the judge listed only two of the statutory factors. The majority's reliance on the "preceding elements" language is misplaced. While it is true that the Washington court found that language "further supported " the inference that the enumerated factors were the sole factors to be considered by the jury, id. at 1370, the court concluded that "a reasonable juror might well infer" the listed factors were exclusive from the judge's use of the term "only" with respect to aggravating factors and from the immediately following "almost exactly parallel( )" language pertaining to mitigating circumstances. These two features of the judge's instruction alone would have supported such inference. See id. The "preceding elements" language present in Washington was supportive, but clearly not the decisive factor in the court's decision. Id. The majority's second purported distinction-the enumeration of all the statutory mitigating factors here in comparison with two listed in Washington -is a distinction without a difference. The issue we are here concerned with is whether the jury reasonably may have believed it was limited to considering mitigating evidence that fit within the statutorily enumerated factors. Whether the instructions set forth two, five, or a dozen statutory factors has no bearing on the jury's understanding of the defendant's right under Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) to have it consider nonstatutory factors as well. At petitioner's sentencing hearing, as in Washington's and Lockett's, his attorney presented evidence concerning his character and background. "(N)owhere in the trial court's charge to the jury in the sentencing phase of (petitioner's) trial is there any explicit instruction that the jury was free to consider mitigating factors other than (those enumerated in the statute)," however. Id. at 1365. In Washington, the court found that no language in the charge rectified the absence of such an instruction by indicating to a reasonable jury that it was not limited to the statutory factors. The court reached this conclusion despite the trial judge's prefatory instruction that in reaching its decision the jury "must obviously consider the detailed circumstances of the offense for which the defendant was convicted and the defendant himself." Id. at 1369-70. Here there was lacking even the vague reference to the defendant's character and circumstances that was present in the Washington case. See note 8 supra. Thus, the instructions given in petitioner's sentencing hearing were even less likely to effectuate petitioner's right to have the jury consider evidence of his character and background than the instructions invalidated in Washington.[9]
 
 
 84
 Finally, the majority ascribes great significance to the sentencing judge's finding that "(t)here are no mitigating circumstances existing-either statutory or otherwise-which outweighs (sic) any aggravating circumstances." Majority Opinion, supra, at 440. See Trial Court Findings on Sentencing, reprinted in Ford v. State, 374 So.2d 496, 500-02 n.1 (Fla.1979). From this four-word phrase buried in the middle of the trial judge's detailed findings concerning the statutory mitigating and aggravating factors, the majority discerns not only an understanding on the part of the judge that nonstatutory mitigating evidence was relevant; the majority additionally "conclude(s)" from these words that the "judge's perception that nonstatutory factors could be considered was conveyed to the advisory jury." Majority Opinion, supra, at 441 (emphasis added). With all due respect, I am unable to follow the majority's reasoning. It has always been my understanding that jury instructions, not trial court findings, serve the function of informing the jury of the law. For the reasons stated above, I do not believe the instructions in this case adequately informed the jury of its duty to consider nonstatutory mitigating evidence.
 
 
 85
 Florida Supreme Court's Consideration of Extra-Record Materials
 
 
 86
 As the majority notes, petitioner claims the Florida Supreme Court reviewed various reports, evaluations, and other materials relevant to his character that he was unaware were being used and was afforded neither access to nor an opportunity to rebut.[10] Petitioner, with 122 other capital defendants in Florida, raised this claim initially in a habeas action in the Florida Supreme Court. Brown v. Wainwright, 392 So.2d 1327 (Fla.1981), cert. denied, --- U.S. ----, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981). In deciding that claim,[11] the Florida court accepted, arguendo, the "petitioners' most serious charges," id. at 1331, and held that as a matter of law petitioners were not entitled to relief, id. at 1331-33. The court thus received no evidence nor made any factual findings in reaching its decision. The reasoning given by the Florida court for its resolution of this issue was twofold. First, it declared that extra-record materials are "irrelevant" to, and "play no part in," its review of capital sentences. Id. at 1331, 1332. Second, it held that the rule in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), on which petitioners relied was inapplicable to situations where extra-record information was considered only at the review stage and not during the initial sentencing proceeding. Id. at 1331-33.
 
 
 87
 The majority adopts wholesale the reasoning of the Florida court, holding that the appellate review function is distinguishable from sentence "imposition" and that the former is not subject to any of the procedural safeguards that govern the latter. Majority Opinion, supra, at 443-444. The majority accepts the state court's description of its function and its assertion that it "properly perform(s)" that function as factual findings that must be presumed correct. Majority Opinion, supra, at 444 (citing Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)). As an additional basis for denying petitioner's claim, the majority states that petitioner has presented no evidence that the practice he complains of was utilized in his own case or that any extra-record material that possibly was reviewed was prejudicial. I am unpersuaded by the majority's discussion and find disturbing its treatment of this important issue.
 
 
 88
 The sentencing stage of a criminal trial can be as critical, with respect to its impact on the accused, as the determination of guilt. The significance of the sentencing process and its effect on the defendant are greatest in cases involving the death penalty, which "differs from all other forms of criminal punishment, not in degree but in kind." Furman v. Georgia, 408 U.S. 238, 306, 92 S.Ct. 2726, 2760, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring).[12] See also Witherspoon v. Illinois, 391 U.S. 510, 522 n.20, 88 S.Ct. 1770, 1776 n.20, 20 L.Ed.2d 776 (1968). Hence Furman held that imposition of the death penalty violates the eighth amendment where the process by which it is imposed is standardless and arbitrary. Subsequent cases reaffirmed this principle holding that individualized sentencing, guided by standards and procedures that constrain the sentencer's discretion, is constitutionally mandated in capital cases. Lockett v. Ohio, 438 U.S. 586, 600-01, 605, 98 S.Ct. 2954, 2962-2963, 2965, 57 L.Ed.2d 973 (1978).[13]
 
 
 89
 In Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the Supreme Court specifically addressed whether a death sentence imposed on the basis of material not disclosed to the defendant violated the Constitution.[14] The Court held that procedure unconstitutional under the eighth amendment and the due process clause.[15] The plurality first noted two constitutional developments requiring close scrutiny of capital sentencing procedures: (1) the Court's recognition of the "qualitative difference"[16] between the death penalty and other punishments and the corresponding need to ensure that capital sentencing is "based on reason rather than caprice or emotion," id. at 357-58, 97 S.Ct. at 1204, and (2) the decisions holding that "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause," id. at 358, 97 S.Ct. at 1204. With these developments in mind, the plurality considered and rejected the state's asserted justifications for allowing imposition of the death penalty on the basis of confidential information, because the risk that confidential information "may be erroneous, or may be misinterpreted, by the investigator or by the sentencing judge, is manifest" and "the interest in reliability (in capital sentencing) plainly outweighs the State's interest in preserving the availability of (such) information." Id. at 359, 97 S.Ct. at 1205.[17] The plurality found the argument that trial judges should be trusted to exercise their discretion responsibly in relying on confidential information was based "on the erroneous premise that the participation of counsel is superfluous to the process of evaluating the relevance and significance of aggravating and mitigating facts" and, in any event, was clearly foreclosed by Furman. Id. at 360, 97 S.Ct. at 1205.
 
 
 90
 The majority, following the reasoning of the Florida Supreme Court, attempts to distinguish this case from Gardner on the ground that the confidential information in this case was considered at the appellate review stage rather than during the initial sentencing proceeding.[18] Majority Opinion, supra, Slip op. at 1088, at ----. The majority's argument that "there cannot exist a due process violation under Gardner " where the nonrecord information comes into play at the appellate level must proceed from one or both of the following premises: that rational appellate review is not an essential component of capital sentencing procedures under the eighth amendment, or that use of nonrecord information without notice to the defendant will not undermine the reliability of appellate review in the same way Gardner recognized it would affect the reliability of initial sentencing. Either premise is erroneous. A rational appellate review process is one of the two[19] fundamental requirements of capital sentencing procedures established by the Supreme Court's 1976 death penalty decisions. See Woodson v. North Carolina, 428 U.S. at 303, 305, 96 S.Ct. at 2990, 2991 (plurality opinion); Roberts v. Louisiana, 428 U.S. at 335 & n.11, 96 S.Ct. at 3007 & n.11 (plurality opinion). Indeed, the Court relied on the appellate review provision in upholding the Florida statute under which petitioner was sentenced, viewing it as one of the means by which the statute assured that the death penalty would not be imposed on the basis of passion, prejudice, or any other arbitrary factor. Proffitt v. Florida, 428 U.S. at 250-53, 258-59, 96 S.Ct. at 2965-2967, 2969. Accord Gregg v. Georgia, 428 U.S. at 204-06, 96 S.Ct. at 2939-2940 (Georgia statute's appellate review provision ensures that death penalty will not be imposed capriciously). See also Gardner v. Florida, 430 U.S. at 360-61, 97 S.Ct. at 1205-1206 (trial judge's failure to make available to appellate court information he considered in imposing sentence renders sentencing procedure invalid). The careful consideration given by the Supreme Court to the adequacy of the Florida statute's review process belies any suggestion that the Court did not consider appellate review integral to capital sentencing. See Proffitt v. Florida, 428 U.S. at 258-59, 96 S.Ct. at 2969. Second, the risk that an appellate court's reliance on nonrecord information, without providing notice to the defendant of the substance of that information or an opportunity to contest its accuracy, will result in the affirmance of a sentence on the basis of erroneous or misinterpreted information presents as grave a threat of the arbitrary imposition of death condemned in Furman as the risk involved when such a procedure is engaged in by the initial sentencer. The majority insists that there is no such risk involved here because the appellate court merely reviewed, and did not "impose," petitioner's sentence. If, in deciding to affirm petitioner's sentence, the Florida court reviewed and relied on undisclosed, and possibly inaccurate, information concerning petitioner's character and prison record, however, that court's disregard for the interests of petitioner and society that death sentences be predicated on reliable factfinding is no less egregious than the similar actions of the trial judge in imposing the sentence invalidated in Gardner. In both situations the "(a) ssurances of secrecy are conducive to the transmission of confidences which may bear no closer relation to fact than the average rumor or item of gossip"; in both the absence of defense counsel's participation precludes the adversarial debate our system recognizes as "essential to the truthseeking function." See Gardner v. Florida, 430 U.S. at 359, 360, 97 S.Ct. at 1205.
 
 
 91
 Nor do I consider a satisfactory explanation the Florida court's insistence that factfinding is foreign to its appellate review function and that any nonrecord information it received was therefore superfluous to its decisions. For, notwithstanding the Florida court's attempt to deemphasize the evidentiary review aspect of its appellate function,[20] the essence of that function as recognized by the United States Supreme Court in Proffitt v. Florida, 428 U.S. at 253, 96 S.Ct. at 2967, is the "review(ing) and reweigh(ing)" of evidence of aggravating and mitigating circumstances "to determine independently whether the imposition of the ultimate penalty is warranted." Id. (citing Songer v. State, 322 So.2d 481, 484 (Fla.1975); Sullivan v. State, 303 So.2d 632, 637 (Fla.1974)).[21] It is not at all inconceivable that, in performing this function, the Florida Supreme Court might decide to sustain a sentencer's finding of aggravating circumstances on the basis of evidence that, although not before the sentencer, nonetheless supports the sentencer's finding. Such evidence, because untested by the adversary process, clearly could distort the court's appellate functions.[22] The Florida court did not deny that it systematically requested and received nonrecord information concerning capital defendants, see Brown v. Wainwright, 392 So.2d at 1330, 1331; moreover it essentially admitted having used the information for some purpose by its statement that "(t)he 'tainted' information we are charged with reviewing was ... in every instance obtained to deal with newly-articulated procedural standards." Id. at 1333 n.17. See note 19 supra. The mystery that the Florida Supreme Court has chosen to leave unresolved concerning the purpose of its requests for and its use of nonrecord information only underscores the need for a complete factual record in this case. If, as the majority believes, the Florida court did not seek out or consider information not contained in petitioner's record, or if its receipt and use of such material was properly circumscribed by adequate procedural safeguards, these facts would surely be brought out through discovery or an evidentiary hearing. As noted above, however, petitioner has not yet been afforded discovery nor any other method of eliciting the facts pertinent to his claim. The majority's affirmance of the district court's denial of discovery on the ground that petitioner has presented insufficient evidence places petitioner in the impossible position of having to prove his claim as a prerequisite to being allowed to gather evidence to support it. This result is not merely illogical; it could promote the conclusion that the court is more concerned with expediting its admittedly unpleasant task of reviewing state's capital sentencing decisions than it is with ensuring the reliability and consistency of those decisions as mandated by Furman under the eighth amendment. Respectfully I dissent.
 
 On Rehearing
 
 92
 Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT*, ANDERSON and CLARK, Circuit Judges.
 
 BY THE COURT:
 
 93
 A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc,
 
 
 94
 IT IS ORDERED that this cause shall be reheard by the Court en banc on briefs with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.
 
 
 
 *
 Honorable Virgil Pittman, U. S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 The Eleventh Circuit, in the en banc decision of Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit, decided prior to October 1, 1981
 
 
 [1]
 Stephens was orally argued before the Supreme Court on February 24, 1982, 50 U.S.L.W. 3694, and the Court's decision is still pending. Since in my opinion this case cannot adequately be distinguished from Stephens, the Supreme Court's decision in Stephens could affect the outcome of this case. For this reason, I would defer decision of the Stephens issue until the Supreme Court has decided it
 
 
 [2]
 In Stephens, the judge had permitted the jury to consider four of the statutory aggravating circumstances. The jury found that three of the four were present and recommended death. On review, the Georgia Supreme Court noted that one of the circumstances relied on by the jury had subsequently been held unconstitutionally vague; it nonetheless affirmed Stephens' sentence because it found the evidence supported the other three aggravating factors found by the jury. See Stephens v. Zant, 631 F.2d at 405-06
 In Henry, the court faced a similar situation. At the defendant's sentencing hearing the prosecutor had presented evidence of an aggravating factor not within those listed in the sentencing statute, and the judge instructed the jury that they were not limited to consideration of the statutory aggravating factors. The jury recommended the death penalty, which the judge then imposed. The Florida Supreme Court upheld the sentence even though it recognized that the judge had erred in allowing the jury to consider the nonstatutory factor, concluding that "death sentences partially predicated on nonstatutory aggravating factors do not violate constitutional prohibitions." Henry v. Wainwright, 661 F.2d at 59 (citing Elledge v. State, 346 So.2d 998, 1002-02 (Fla.1977)).
 
 
 [3]
 Stephens v. Zant, 631 F.2d at 406 (as modified by 648 F.2d 446); Henry v. Wainwright, 661 F.2d at 60
 
 
 [4]
 Henry v. Wainwright, 661 F.2d at 60 n.8 (citing Woodson v. North Carolina, 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976)). The Henry panel rejected the reasoning of the Florida court that the sentence would be affirmed as long as no mitigating circumstances were found because "there is no danger that the unauthorized (aggravating) factor tipped the scale in favor of death." Henry v. Wainwright, 661 F.2d at 59. Henry held that the reviewing court's role in capital sentencing was not to second-guess the motives of the jury in recommending the death penalty:
 Guarding against the arbitrary and discriminatory imposition of the death penalty must not become simply a guessing game played by a reviewing court in which it tries to discern whether the nonstatutory aggravating factors exerted a decisive influence on the sentence determination. The guarantee against cruel and unusual punishment demands more.
 Id. at 60.
 Similarly, in Stephens the court held the sentence unconstitutional because it was "impossible for a reviewing court to determine satisfactorily that the verdict in this case was not decisively affected by an unconstitutional statutory aggravating circumstance." Stephens v. Zant, 631 F.2d at 406. The constitutional deficiency in the sentence was not only that "the jury's discretion here was not sufficiently channelled," but also "that the process in which the death penalty was imposed in this case was not 'rationally reviewable.' " Id. at 406. See also id. (as modified by 648 F.2d 446).
 
 
 [5]
 See Trial Court Findings on Sentencing, reprinted in Ford v. State, 374 So.2d 496, 500-02 n.1 (Fla.1979). Under Florida's capital sentencing statute, Fla.Stat. § 921.141, a defendant convicted of a crime punishable by death receives a separate sentencing hearing before the judge and jury that convicted him. At that proceeding, the parties may present evidence of aggravating and mitigating circumstances, and the jury is instructed to weigh those factors and render an advisory sentence. If it concludes that the aggravating factors outweigh the mitigating ones it must recommend the death penalty; otherwise it is required to recommend life imprisonment. Id. § 921.141(2). The judge, with the jury's recommendation in mind, then makes the same determination and decides which sentence to impose. Id. § 921.141(3). If the judge imposes a sentence of death, he is required to set forth findings of fact with respect to aggravating and mitigating circumstances. Id
 
 
 [6]
 Specifically, it held that the evidence did not support the trial court's findings of two of the factors and that the evidence used by the judge to support two other factors should have been viewed as establishing only one aggravating circumstance. Ford v. State, 374 So.2d at 501-03
 
 
 [7]
 E.g., Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (aggravating criterion that offense was "outrageously or wantonly vile, horrible, or inhuman" unconstitutional as applied to crime reflecting no more "depravity" of mind than that of anyone guilty of murder); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (mitigating criteria to be considered in capital sentencing must include evidence proffered by defendant concerning his character, record, and offense). See also Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (aggravating circumstances will not justify death sentence where such penalty is disproportionate to offense); Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (death sentence must accord with "evolving standards of decency" as reflected in "contemporary values" and with fundamental "dignity of man")
 
 
 [8]
 The instructions invalidated in Washington were as follows:
 Members of the jury, as the court explained to you in the beginning of the trial, you have heard some evidence in aggravation put on by the State and you have heard evidence in mitigation put on by the defendant. You must in your sentencing find at least one item present of aggravation before you could impose the death penalty. If you find an item in aggravation present beyond a reasonable doubt, then you must consider any evidence in mitigation. And unless the evidence in mitigation could overcome the aggravation, of course, then you could return the death penalty ....
 You have found the defendant guilty of the crime of capital murder. You must now decide whether the defendant will be sentenced to death or to life imprisonment. In reaching your decision you must obviously consider the detailed circumstances of the offense for which the defendant was convicted and the defendant himself. To return the death penalty you must find that the aggravating circumstances, those which tend to warrant the death penalty, outweigh the mitigating circumstances, which are those which tend to warrant the lesser (sic) severe penalty. Now consider only the following elements of aggravation in determining whether the death penalty should be imposed : One, the capital murder was committed while the defendant Johnny Lewis Washington was engaged in the commission of the crime of robbery. Two, the defendant Johnny Lewis Washington committed this capital murder in an especially heinous, atrocious, or cruel manner. Those are your elements of aggravation.
 You must unanimously find beyond a reasonable doubt that one or more of these existed in order to return the death penalty.... Now if one or more of those elements of aggravation is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstances. Now consider the following elements of mitigation in determining whether the death penalty should not be imposed : One, that the defendant has no significant history of prior criminal activity and two, the defendant's age at the time of the capital murder.
 If you unanimously find from the testimony that one or more of the preceding elements of mitigation exist(s), then you must consider whether it outweighs the aggravating circumstances you previously found and you must return one of the following verdicts ...
 Washington v. Watkins, 655 F.2d at 1367-68.
 The jury instructions given by the trial judge at petitioner's trial provided:
 Ladies and gentlemen, you have heard the evidence and argument of counsel necessary to enable you to render an advisory sentence to the Court as to whether the defendant should be sentenced to death or to life imprisonment.
 Your advisory sentence will have three parts.
 First: Whether sufficient aggravating circumstances exist to justify a sentence of death.
 Second: Whether sufficient mitigating circumstances exist which outweigh any aggravating circumstances to justify a sentence of life imprisonment rather than a sentence of death.
 Third: Based on those considerations whether the defendant should be sentenced to life imprisonment or to death.
 As to aggravating circumstances, in considering whether sufficient aggravating circumstances exist to justify a sentence of death, you shall consider only the following :
 A, whether the defendant was under sentence of imprisonment when the defendant committed the murder of which he has just been convicted by you;
 B, whether the defendant has previously been convicted of another capital felony or of a felony involving the use of or threat of violence to the person;
 C, whether in committing the murder of which the defendant has just been convicted by you, the defendant knowingly created a great risk of death to many persons;
 D, whether the murder of which you have convicted the defendant was committed while the defendant was engaged in the commission of or attempt to commit, or flight after committing, or attempting to commit any robbery, rape, arson, burglary, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb;
 E, whether the murder of which the defendant has just been convicted by you was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
 F, whether the murder of which the defendant has just been convicted by you was committed for pecuniary gain;
 G, whether the murder of which the defendant has just been convicted by you was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws;
 H, whether the murder of which the defendant has just been convicted by you was especially heinous, atrocious, or cruel.
 As to mitigating circumstances, in considering whether sufficient mitigating circumstances exist which outweigh any aggravating circumstances to justify a sentence of life imprisonment rather than a sentence of death, you shall consider the following :
 A, whether the defendant has no significant history of prior criminal activity;
 B, whether the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance;
 C, whether the victim was a participant in the defendant's conduct or consented to the act;
 D, whether the defendant was an accomplice in the murder committed by another person and the defendant's participation was relatively minor;
 E, whether the defendant acted under extreme duress or under the substantial domination of another person;
 F, whether the capacity of the defendant to appreciate the criminality of his conduct or to conform the defendant's conduct to the requirements of the law was substantially impaired;
 G, the age of the defendant at the time of the crime.
 
 
 [9]
 Washington compels us to remand for resentencing if the trial court's instructions, taken in their entirety, could have led a reasonable juror to believe he could consider only the statutory mitigating circumstances. Our inquiry is thus an objective one that focuses on the judge's instructions, and petitioner is not required to prove actual subjective misunderstanding of the law by the jurors. Although petitioner need not establish the actual state of mind of the jurors, evidence of their subjective understanding if available may support a conclusion that the instructions could reasonably have engendered their misunderstanding of the law. In this case, there is evidence in addition to the judge's instructions suggesting that the jurors actually considered themselves limited to the statutory mitigating circumstances. At the sentencing hearing, the judge read to the jury the charge concerning aggravating and mitigating circumstances. See note 8 supra. He did not give the jury a copy of that portion of the charge, however, because petitioner's attorney requested that he not do so. Shortly after the jury began its sentencing deliberations, the foreman submitted a request to the judge, which stated: "Judge Lee, we would like the list of charges regarding the definitions of aggravating circumstances and mitigating circumstances. Signed L. Pati, foreman." The defense attorney objected to the judge's reinstructing the jury on this point, but stated that if the court was to do so he would prefer the instruction be given orally rather than in writing. The judge informed the foreman that he would not provide them with a written charge but would again read it to them if they wished. The foreman then said to the other jurors: "You want to hear them again; what they consider the aggravating circumstances; what they consider the mitigating circumstances. They can't give us the things to take in. He will read them again for us; okay?" The judge then repeated the instruction previously given concerning aggravating and mitigating factors. See note 9 supra. The foreman's request for reinstruction concerning "what (the court) consider(s) the mitigating circumstances" indicates that he understood the circumstances enumerated by the court to be exclusive
 
 
 [10]
 Petitioner claims that at the time of his appeal to the Florida Supreme Court that court was engaged in the regular practice of soliciting, receiving, and reviewing extra-record materials of this type-without notifying the parties involved-in connection with its review of sentencing in capital cases. Petitioner further alleges that much of this material, along with the court's letters requesting it in particular cases, was purged from the court's files rendering verification that the practice was engaged in in particular cases very difficult
 
 
 [11]
 While refusing to allow joinder of the 123 petitions because "the facts relevant to each vary significantly," the court adjudicated Brown's petition, which adjudication in its view "effectively dispose(d) of all claims for relief of those petitioners who have joined with Brown." Id. at 1330. Although the court claimed to be adjudicating Brown's petition only, its opinion repeatedly refers to "petitioners' " claims and contentions, id. at 1330, 1331, 1332 & 1333, and concludes by denying "(t)he petitions of Brown and the others for writs of habeas corpus and for other extraordinary relief." Id. at 1333 (emphasis added)
 
 
 [12]
 Five members of the Supreme Court have "expressly recognized that death is a different kind of punishment from any other which may be imposed in this country." Gardner v. Florida, 430 U.S. 349, 357, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (citing various concurring and dissenting opinions in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972))
 Lockett followed a group of cases, decided in 1976, in which the Supreme Court addressed the constitutionality of states' post-Furman death penalty statutes. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). The plurality opinions in those cases emphasized that capital sentencing procedures should not create "a substantial risk that the death penalty (will) be inflicted in an arbitrary and capricious manner," Gregg v. Georgia, 428 U.S. at 188, 96 S.Ct. at 2932; Jurek v. Texas, 428 U.S. at 274, 276, 96 S.Ct. at 2957-2958; Proffitt v. Florida, 428 U.S. at 252-53, 258, 96 S.Ct. at 2966-2967, 2969, and required that sentencer discretion in capital cases be "directed and limited" to provide consistent and rational imposition of the death penalty, Gregg v. Georgia, 428 U.S. at 189, 96 S.Ct. at 2932; Proffitt v. Florida, 428 U.S. at 255-58, 96 S.Ct. at 2968-2969; Jurek v. Texas, 428 U.S. at 270-74, 276, 96 S.Ct. at 2955-2957, 2958, and ensure "reliability in the determination that death is the appropriate punishment in a specific case," Woodson v. North Carolina, 428 U.S. at 305, 96 S.Ct. at 2991.
 
 
 [13]
 Lockett held unconstitutional a capital sentencing statute that limited the sentencer's consideration of mitigating factors concerning the defendant's character, record, and offense. Under Lockett, individualized sentencing with consideration given to all relevant evidence proffered by the defendant concerning his character, record, and offense is essential in capital cases
 
 
 [14]
 In Gardner, the trial judge had ordered a presentence investigation after the jury had returned an advisory verdict recommending a life sentence. The judge had then disclosed part, but not all, of the presentence investigation report to the defendant's counsel and, apparently on the basis of the report, had rejected the jury's advisory verdict and sentenced defendant to death. Gardner v. Florida, 430 U.S. at 352-53, 97 S.Ct. at 1201-1202. The Gardner plurality refused to approve this procedure on the basis of Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), which had held that due process guarantees neither a hearing nor participation by the defendant in capital sentencing. Instead the Court reaffirmed "its obligation to re-examine capital sentencing procedures against evolving standards of procedural fairness in a civilized society." Gardner v. Florida, 430 U.S. at 357, 97 S.Ct. at 1204. The Court recognized that substantial constitutional developments had occurred during the 30 years since the Williams case was decided and determined that those developments justified a departure from Williams. Id. at 357-62, 97 S.Ct. at 1204-1206
 
 
 [15]
 The plurality opinion in Gardner expressly held that the sentencing procedure at issue violated the due process clause of the fourteenth amendment. Gardner v. Florida, 430 U.S. at 351, 358, 97 S.Ct. at 1201, 1204. The opinion's emphasis on the difference in kind between the death penalty and other punishments, id. at 357-58, 97 S.Ct. at 1204, rejection of some arguments that it conceded might have merit in noncapital cases, id. at 360, 97 S.Ct. at 1205, and heavy reliance on Furman and other death penalty decisions, id. at 360-61, 97 S.Ct. at 1205-1206, however, indicate that the plurality's reasoning involved a cross-section of eighth amendment and due process concerns. Justice White's concurring opinion expressed the view that the procedure at issue clearly violated the eighth amendment and thus there was no need to address the due process issue. Id. at 362-64, 97 S.Ct. at 1206-1207 (White, J., concurring). Justice Blackmun concurred in the judgment on the basis of Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976)-decisions based on the eighth amendment. Gardner v. Florida, 430 U.S. at 364, 97 S.Ct. at 1207 (Blackmun, J., concurring). Justice Brennan agreed with the plurality that the procedure at issue violated the due process clause but adhered to his prior opinions stating that the death penalty violates the eighth amendment in all circumstances. Id. at 364-65, 97 S.Ct. at 1207-1208 (Brennan, J.)
 
 
 [16]
 Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)
 
 
 [17]
 The state argued that confidentiality was essential to enable investigators to obtain sensitive disclosures. In addition to this contention, the plurality rejected the state's argument that full disclosure of presentence reports would cause unnecessary delay, finding that the problem had been "overstated" and observing that "if the disputed matter is of critical importance, the time invested in ascertaining the truth would surely be well spent if it makes the difference between life and death." Id. at 359-60, 97 S.Ct. at 1205. The state's contention that disclosure of psychiatric and psychological evaluations to the defendant could disrupt the process of rehabilitation, in the plurality's view, "has absolutely no merit in a case in which the judge has decided to sentence the defendant to death." Id. at 360, 97 S.Ct. at 1205
 
 
 [18]
 The majority's broad declaration that "(t)he (appellate) court does not 'impose' sentence, and for that reason there cannot exist a due process violation under Gardner " indicates that its basis for distinguishing Gardner is not simply that it does not believe the appellate court considered nonrecord information in this case. To the extent the majority additionally relies on the Florida court's denial of petitioner's assertion that confidential information was considered and played a role in its review of sentencing decisions, I cannot agree with the majority's approach. The Florida Court received no evidence, rendered no hearing, afforded petitioners no cross-examination, and set forth no factual findings concerning the procedure at issue. In short, that part of the Florida court's opinion accepted by the majority here as a "correct ( ) ( ) description of its function" is nothing other than a conclusory declaration by the Florida court that it acted properly. Irrespective of the adequacy of the state court's handling of petitioner's constitutional claim, surely our role in reviewing the serious constitutional issue raised by this habeas petition demands more than blind acceptance of conclusory remarks made by the state court, who in essence is an adversary in this proceeding. Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), cited by the majority, is inapposite, since it applies only to factual determinations made by a state court "after a hearing on the merits of a factual issue." Id. at 546, 101 S.Ct. at 768. See also 28 U.S.C. § 2254(d)(1). As noted above, the Florida court made no findings of fact but simply accepted, arguendo, the facts presented by the petitioners. Finally, I find the Florida court's assertion that nonrecord evidence plays no role in its capital sentence decisionmaking inexplicable. As Justice Marshall has noted,
 If the court does not use the disputed non-record information in performing its appellate function, why has it systematically sought the information? Moreover, the court intimated that it does use the information, although in an undisclosed "procedural" manner: "The 'tainted' information we are charged with receiving was ... in every instance obtained to deal with newly-articulated procedural standards." 392 So.2d at 1333, n.17. Petitioners are entitled to the assurance either that such information is not sought and placed before the court, or that its use is circumscribed by appropriate safeguards.
 Brown v. Wainwright, --- U.S. ----, ----, 102 S.Ct. 542, 70 L.Ed.2d 407, 408 (1981) (Marshall, J., dissenting from denial of certiorari).
 
 
 [19]
 The other requirement established in the 1976 cases, having been preordained by Furman, was the provision of standards and procedures to limit and direct sentencer discretion. E.g., Woodson v. North Carolina, 428 U.S. at 303, 96 S.Ct. at 2990; Gregg v. Georgia, 428 U.S. at 196-98, 199, 206-07, 96 S.Ct. at 2936, 2937, 2940-2941; Proffitt v. Florida, 428 U.S. at 253, 258, 96 S.Ct. at 2967, 2969. A third requirement emphasized in more recent cases, which is also designed to ensure that the discretion exercised by sentencers will be an informed discretion, is that the defendant be allowed to present and have the sentencer consider evidence shedding light on his character, background, and the circumstances of the offense. Eddings v. Oklahoma, --- U.S. ----, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)
 
 
 [20]
 The Florida court suggested that the limited nature of its reviewing function-under which it "determine(s) if the jury and judge acted with procedural rectitude" and "compares the case under review with all past capital cases to determine whether or not the punishment is too great"-necessarily precluded its use, or misuse, of nonrecord information. See Brown v. Wainwright, 392 So.2d at 1331-33
 
 
 [21]
 If the Florida Supreme Court's function in reviewing capital sentencing decisions had changed substantially since Proffitt was decided, that fact would call into question the continued vitality of the Proffitt holding-which as noted above upheld Florida's capital sentencing scheme partly on the basis of the appellate review process just described. A review of recent Florida Supreme Court decisions indicates, however, that the court does continue to review sentencer findings for evidentiary sufficiency. E.g. McCrae v. State, 395 So.2d 1145, 1153 (Fla.1980); (evidence sufficient to establish aggravating circumstance that crime was especially heinous and cruel); Peek v. State, 395 So.2d 492, 499 (Fla.1980) (evidence insufficient to establish aggravating factor that crime was committed for pecuniary gain)
 
 
 [22]
 See also Brown v. Wainwright, --- U.S. ----, ----, 102 S.Ct. 542, 544, 70 L.Ed.2d 407, 409 (1981) (Marshall, J., dissenting from denial of certiorari):
 When reviewing a sentence for procedural regularity, the court might uphold or vacate the sentence in part on grounds not considered by the trial court, or on factually erroneous grounds, because it has viewed ex parte unreliable, nonrecord information concerning the appellant. And when reviewing sentences for proportionality, the court's comparison of the sentences of other capital defendants with that of the appellant is rendered meaningless if the court has upheld or vacated the death sentences of other individuals after viewing this kind of information, or if the court used possibly erroneous information only as background data for its proportionality determination. The more systematic the practice of reviewing such information, the greater the danger of this second form of distortion.
 
 
 *
 Judge Hatchett is recused and did not participate in this decision