Mark Dwayne SMITH

v.

Lloyd B. JOHNSON, Sheriff, et al.

Civ. A. No. 77–1906.

United States District Court,
E. D. Louisiana.

Sept. 11, 1977.

Julian R. Murray, Jr., New Orleans, La., John L. Disselliss, III, La Place, La., for plaintiff.

Melvin P. Barre, New Orleans, La., Roland J. St. Martin, La Place, La., for defendant.

ALVIN B. RUBIN, District Judge:

The issues raised by this petition for habeas corpus concern not crime but punishment. The petitioner does not contend his trial was marred or his conviction improper. He raises two important issues concerning the constitutionality of his subsequent sentence to life imprisonment:

1. Whether, because he was a juvenile at the time of his offense, and was then subject only to either the death penalty or juvenile incarceration, the sentence violates the *ex post facto* clause of the United States Constitution, Art. 1, § 10, on the ground that the death penalty could not be applied constitutionally and life imprisonment was a more severe penalty than any available at the time of the offense;

2. Whether the sentence violates the due process clause of the United States Constitution, as made applicable to the states by the Fourteenth Amendment, because, at the time, there was no explicit legislative authority for a Louisiana court to sentence a juvenile to life imprisonment.

### I.

On January 26, 1975, the owner of a service station was killed by a gun shot wound during the course of a robbery perpetrated at his place of business in St. John the Baptist Parish, Louisiana. Later that day, petitioner, Mark D. Smith, together with a David Howell, was arrested for the crime, and was soon thereafter indicted for first degree murder. When the alleged offense was committed, Mark Smith was sixteen years of age.

At that time, Article 30 of Louisiana Criminal Code, LSA–R.S. § 14:30, defined first degree murder, in part, as:

. . . killing of a human being:

1) When the offender has a specific intent to kill or to inflict great bodily harm *and* is engaged in the perpetration or attempted perpetration of . . . rape or armed robbery;

\*       \*       \*       \*       \*       \*

Whoever commits the crime of first degree murder shall be punished by death. (Emphasis supplied.)

Article 30.1 of the Louisiana Criminal Code, LSA–R.S. § 14:30.1, defined second degree murder as:

. . . killing of a human being:

1) When the offender has a specific intent to kill or to inflict great bodily harm; *or*

2) When the offender is engaged in the perpetration or attempted perpetration of . . . armed robbery, or simple robbery, even though he has no intent to kill.

\*       \*       \*       \*       \*       \*

Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation or suspension of sentence for a period of twenty years. (Emphasis supplied.)

Because petitioner had not reached his seventeenth birthday at the time of the offense, the provisions of the Louisiana Constitution and legislative acts relating to juveniles were applicable to him. At the time, Article 5 of the Louisiana Constitution of 1974 stated:

*Except for a person fifteen years of age or older who is alleged to have committed a capital offense* or attempted aggrava-

ted rape, the determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday shall be exclusively pursuant to special juvenile procedures which shall be provided by law. However, by law enacted by two-thirds of the elected members of each house, the legislature may (1) lower the maximum ages of persons to whom juvenile procedures would apply and (2) establish a procedure by which the court of original jurisdiction may waive such juvenile procedures in order that adult procedures would apply in individual cases. (Emphasis supplied.)

The punishment of persons who had not reached their seventeenth birthday at the time of the commission of the offense for any crime other than a capital offense[1] was provided by LSA–R.S. § 13:1580(2), which stated in part: "Said commitment may be for an indefinite period but in no case [may it be] beyond the minority of the child." There is no definition of "capital offense" in the revised statutes dealing with juveniles but Article 933 of the Louisiana Code of Criminal Procedure defined "Capital Offense" as "an offense that may be punished by death." LSA–C.Cr.Proc. Art. 933.

Mark Smith's trial was severed from that of his codefendant and began on January 27, 1976. The jury was instructed on first degree murder, second degree murder, and manslaughter. It returned a verdict of first degree murder. Accordingly, he was sentenced to death by electrocution. He appealed to the Louisiana Supreme Court. While his appeal was pending, and before it was argued, the United States Supreme Court rendered its decision in *Roberts v. Louisiana*, 1976, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974, holding that the mandatory death penalty provision of Article 30 of the Louisiana Criminal Code was unconstitutional.

The Louisiana Supreme Court affirmed Mark Smith's conviction, but, in response to the *Roberts* decision, ordered that the case be remanded to the district court with instructions that the death penalty be set aside and, in lieu thereof, the defendant be sentenced to life imprisonment.

Petitioner applied to the Louisiana Supreme Court for rehearing on the grounds that the court's "judicial creation" of a life sentence violated the *ex post facto* provision of the United States Constitution. The court denied the application for rehearing without opinion. He filed an application for writ of certiorari to the United States Supreme Court and the writ was denied.

## II.

What constitutes an *ex post facto* law has been given "substance by an accretion of case law." *Dobbert v. Florida*, 1977, 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344. The Supreme Court there said:

In *Beazell v. Ohio*, 269 U.S. 167, 169, [46 S.Ct. 68, 70 L.Ed. 216] (1925), Mr. Justice Stone summarized for the Court the characteristics of an *ex post facto* law:

'It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*'

It is equally well settled, however, that 'the inhibition upon the passage of *ex post facto* laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.' *Gibson v. Mississippi*, 162 U.S. 565, 590, [16 S.Ct. 904, 40 L.Ed. 1075] (1896). '[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppres-

---

1. Although Article 5 of the Louisiana Constitution provided for adult treatment for the noncapital offense of attempted aggravated rape, for purposes of brevity, no reference to that exception is made in this opinion.

sive legislation, see *Malloy v. South Carolina*, 237 U.S. 180, 183, [35 S.Ct. 507, 59 L.Ed. 905] and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.' *Beazell v. Ohio, supra*, 269 U.S. at 171, [46 S.Ct. 68].

Smith's argument rests upon a deceptively simple syllogism: At the time of the offense, the only constitutionally permissible penalty for the petitioner's crime was juvenile incarceration because the death penalty was unconstitutional, *Roberts, supra*; life imprisonment is a harsher penalty than juvenile incarceration; hence, the petitioner has been given a harsher sentence than he could have been given at the moment of the crime and the clause is violated.

The premise on which the first thesis of this syllogism rests is erroneous. The assumption made is that, when a law is declared unconstitutional, the courts must act as if it had never been written. In *Dobbert, supra*, the Supreme Court rejected this hypothesis in a similar *ex post facto* context. It held that a death penalty law declared unconstitutional is not void for all purposes; the statute has at least given notice that the state intended to punish a particular crime with death. Hence, any subsequently-enacted less or equally severe punishment may be imposed on someone who has committed that crime even though the provision for the penalty in the original law has been declared unconstitutional.

In *Dobbert*, petitioner committed an offense when law A, providing for death under certain procedures, was in effect. Before trial, law A was declared unconstitutional insofar as it provided for death. Law B, providing for death for the same offense but requiring different procedures, was enacted and the defendant was tried and sentenced under it. The defendant contended that, because law A was unconstitutional, there was no law providing for death when the crime was committed; hence, he could not be punished under the subsequently enacted statute because he would be subjected to a harsher penalty than any available at the moment of the crime. The court reject-

ed the argument, holding that, although the penal provision of law A was unconstitutional, it put the defendant on notice that the state intended to execute those committing the special offense. The subsequent statute was compared with law A, not with the hypothetical "most severe penalty that is constitutionally applicable at the moment of the crime," to determine whether a harsher penalty was being applied. Hence, the comparison that must be made is between the penalty of death that was declared unconstitutional in *Roberts* and life imprisonment, not between death and juvenile detention.

There is a significant difference between *Dobbert* and the present case. In *Dobbert*, the petitioner was tried, convicted and sentenced under the subsequent law. Here, he was tried and convicted under the earlier law. He was sentenced under that law as well, although for a lesser penalty than that law originally provided for. *Roberts* did not declare the first degree murder statute unconstitutional, nor suggest that an individual convicted under it could not be punished, but held merely that its mandatory death penalty feature was unconstitutional and could not be applied. But, under *Dobbert*, it is not a violation of the *ex post facto* provision for the individual to be sentenced to a penalty less harsh than the one that it appeared he would be subjected to, and was given notice of, at the moment of the crime.

### III.

Petitioner raises a second and related *ex post facto* argument. He contends that there was no law in Louisiana at the time of the commission of the offense that would allow a juvenile to be treated as an adult. The only relevant statute providing for adult punishment of juveniles was, of course, LSA–R.S. § 14:30, under which the petitioner was convicted and which was declared unconstitutional in *Roberts, supra*.

█ The fact that the death penalty provision of the law is cruel and unusual punishment does not render the law invalid or ineffective for all other purposes. Just

as that law was valid for the purpose of putting Mark Smith on notice of the state's intent to execute for first degree murder, the law was also valid to effect the legislative decision that those convicted of first degree murder would be treated as adults.

The Louisiana Supreme Court has, in fact, held that LSA–R.S. § 14:30 [2] constituted a legislative classification of the crime of murder as a capital offense, and that conduct punishable by this statute remains a "capital" crime for purposes of Louisiana law even though *Furman v. Georgia*, 1972, 408 U.S. 238, 92 S.Ct. 2726, had declared a moratorium on imposition of the penalty. *State v. Whatley*, La.1975, 320 So.2d 123, 125.

Petitioner contends that the decision in *Whatley* as to what constitutes a "capital offense" for which a juvenile will be treated as an adult under Article 5, § 19, of the Louisiana Constitution of 1974, is in contradiction to prior Louisiana jurisprudence on the same subject, and thus constitutes a violation of the *ex post facto* clause. An "unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law" and is barred for that reason by the due process clause. *Bouie v. City of Columbia*, 1964, 378 U.S. 347, 353–354, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894.

However, *Whatley* does not overturn Louisiana's prior jurisprudence. Petitioner cites *State ex rel. Moore v. Warden of Louisiana State Penitentiary*, La.1975, 308 So.2d 749, for the proposition that "capital offense" had, until *Whatley*, been defined as an offense for which the death penalty can actually be imposed and that, if that penalty cannot be imposed, the offense is no longer capital. *Moore* involved a juvenile charged with first degree murder who sought to plead guilty to second degree murder. Because it is only for the crime of first degree murder that a juvenile may be treated as an adult, the Supreme Court held the district court was without jurisdiction to entertain the plea. The court stated:

The uniform jurisprudence of the State since 1921 holds that the jurisdiction of the district courts is limited to the determination of guilt and punishment for *capital* crimes (and the constitutionally provided for attempted aggravated rape). Although it can be argued that the constitutional deposit of jurisdiction in the district courts of the trial of juveniles in capital *cases* is the grant of jurisdiction embracing every part of the case, from arraignment to sentence, we decline to make such a departure from established jurisprudence, particularly in view of the policy of the State that juveniles are not to be punished as adults, except as provided for by the constitution.

308 So.2d at 752. (Emphasis in the original).

The court in *Moore* merely held the district court could not entertain a guilty plea by a juvenile to the substantive offense of second degree murder. This result is necessitated by the fact that the second degree murder statute does not provide for death, hence is not a "capital" offense. The opinion does not hold, or even imply, that the court is without power to adjudicate and sentence a juvenile for an offense that provides for the death penalty, even if that penalty cannot be administered.

Petitioner also cites the case of *State v. Holmes*, 1972, 263 La. 685, 269 So.2d 207, 1972, as standing for the proposition that the Louisiana Supreme Court has interpreted the term "capital offense" to denote those crimes for which a defendant can actually receive the death penalty. The issue before the court in *Holmes* was whether jury requirements that apply in "capital" cases are applicable where, as in LSA–R.S. § 14:30, the death penalty is provided for, but cannot be administered for constitutional reasons. The State argued "that there are no more capital cases, and since the only punishment now available for the crime of murder is life imprisonment at

2. The statute involved, LSA–R.S. § 14:30 (1950), was the predecessor to the statute under which the petitioner was convicted, LSA– R.S. § 14:30 (1973). For reasons detailed subsequently, it is similar in all relevant respects.

hard labor, the constitutional and statutory provisions . . . applicable to non-capital felony cases must now apply to what were formerly 'capital cases.'" 269 So.2d 207, at 209. The court rejected this argument and held that the jury requirements applicable in capital cases prior to *Furman* ought to be applied even though the death penalty could not actually be administered.

Finally, petitioner cites LSA–C.Cr.Proc. Art. 933, which provides:

> Except where the context clearly indicates otherwise, as used in this Code:
>
> \* \* \* \* \* \*
>
> (2) 'Capital offense' means an offense that may be punished by death.

Even if this provision were as lucid as petitioner contends and unequivocally requires that the death penalty actually be applicable to an offense before it becomes "capital", the provision would be inapposite as it is limited by its own terms to the use of the words in the Louisiana Code of Criminal Procedure and would not control the use of that term elsewhere in the Louisiana statutes.

*Whatley* went beyond the prior Louisiana decisions because it dealt with a novel problem; it took a course that could, however, be anticipated from the prior cases. It was not an "unforeseeable" departure as that term was used in *Bouie*. Despite the subsequent decision in *Roberts*, LSA–R.S. § 14:30 gave the petitioner sufficient notice of the legislative intent to treat him as an adult and to punish him by death. *Dobbert, supra.*

It may be assumed that, at the time Mark Smith committed the offense, he could not foresee that *Roberts* would be decided the way it was, although lawyers knew the case was pending and the issue was a debatable one. But it was clear at the time of the offense that the law would treat him as an adult. If he could not foresee that the death penalty would be declared unconstitutional, he could certainly not anticipate that he would then, in consequence, be treated as a juvenile.

Both Smith and Dobbert are being punished less severely than they would have been had the court applied the law of which they were given notice. Hence, the circumstances differ from those presented in *Bouie*, where a substantive criminal statute was interpreted to prohibit acts that one could not reasonably foresee would be prohibited by that statute.

Finally, petitioner argues that, even if *Whatley* is correctly decided and is not at such severe variance with prior jurisprudence as to violate the *ex post facto* clause, it is not dispositive of the case. At the time *Whatley* was decided, LSA–C.Cr.Proc. Art. 817, provided: "In a capital case the jury may qualify its verdict of guilty with the addition of the words 'without capital punishment,' in which case the punishment shall be imprisonment at hard labor for life." Thereafter, but prior to the petitioner's crime, this provision was repealed by the Acts 1972, No. 502, and Acts 1973, No. 125. He contends that the treatment of Whatley as an adult and the imposition of a life sentence on him was justified by the existence of Article 817, and that this same authority was not available in the present case. But there is no indication that the jury qualified its verdict pursuant to Article 817 in *Whatley*, nor that the Supreme Court relied on that Article in reaching its decision.

Accordingly, *Whatley* is a dispositive interpretation of what constitutes a "capital offense" under Louisiana law and will be respected by this court as the judgment of the Louisiana Supreme Court on a matter of state statutory requirements. *Burns Mortgage Co. v. Fried*, 1933, 292 U.S. 487, 494, 54 S.Ct. 813, 814, 78 L.Ed. 1380.

## IV.

Petitioner raises another constitutional issue that has not been addressed explicitly by the Louisiana courts. There is no specific statutory authority for sentencing a juvenile to life imprisonment. LSA–R.S. § 14:30, under which the petitioner was convicted, provides only for death, and that penalty may not be enforced. The only

other statutory penalty for juveniles is incarceration during minority pursuant to LSA–R.S. § 13:1580(2).[3] Petitioner contends that he can be sentenced only pursuant to this law. An adult who is convicted of first degree murder is at least implicitly found guilty of the lesser-included offense of second degree murder, as defined in LSA–R.S. § 14:30.1. But Section 14:30.1 is applicable in terms only to adults. We may assume for present purposes that due process is violated if an individual is subjected by a court to sanctions not provided for or contemplated by legislative authority.

The Louisiana legislature did not anticipate *Roberts* and, accordingly, it did not provide any statutory instruction concerning how a juvenile ought to be sentenced in the event that the death penalty could not be imposed.[4] But its failure to provide for that possibility does not evince an intent either that no sentence be imposed or that a juvenile sentence be imposed. If it is not apparent how the legislature would have resolved the problem, the court should not volunteer its own judgment.

But here the general statutory scheme created by the legislature indicates the solution it intended notwithstanding the absence of specific statutory provisions. The general statutory scheme provided by the legislature, as interpreted by the decisions of the Louisiana Supreme Court on related issues, demonstrates that the lawmakers intended that a juvenile who is convicted of first degree murder, but who cannot be executed, should be treated as an adult and subjected to the next most severe penalty.[5]

The legislature has explicitly provided that juvenile sanctions not be applied to any convicted of first degree murder. As we have noted, LSA–R.S. § 14:30 is valid for purposes of classifying the petitioner as an adult even though the death penalty cannot be imposed. *Whatley, supra.* To treat him as a juvenile, as the petitioner contends he must be, would frustrate rather than further that intent.

If the legislature had expressly provided for life imprisonment, as well as the death penalty, for first degree murder, there would be no question concerning the propriety of imposing life imprisonment; that provision of the law would remain valid and applicable despite *Roberts.* It is only because the legislature did not mention a lesser penalty than death that the present hiatus is created.

There are two possible explanations for the legislature's failure to provide a penalty of life imprisonment: that it thought life imprisonment too severe a penalty for first degree murder, or that it thought the crime of first degree murder so serious as to warrant only the more severe penalty of death. The legislature did not consider life impris-

---

3. Because this provision is not applicable to "capital crimes," it is doubtful that petitioner could be sentenced under it in light of *Whatley.* It may well be that if life imprisonment is not applicable, there will be no penalty at all for the crime of first degree murder.

4. As the Chief Judge of this Circuit has said in another context: "Our principal task in this case is to determine what [the legislature] would have thought about a subject about which it never thought or could have thought and one about which we have never thought nor any other Court has thought." *Wirth Ltd. v. S/S Acadia Forest,* 5 Cir. 1976, 537 F.2d 1272, 1276.

5. The Louisiana Supreme Court, 339 So.2d 829, 835, in affirming petitioner's conviction, ruled upon his contention that because first degree murder lost its status as a capital crime, he should be remanded to the custody of the juvenile court. The Court followed *Whatley* in holding that the district court retained jurisdiction. Because of *Roberts,* it held:

> . . . the death [penalty] imposed upon him is annulled and set aside, and the case is remanded to the district court with instructions to the trial judge to sentence defendant to imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years.

This penalty is provided for second degree murder LSA–R.S. § 14:30.1. Petitioner contends that he was sentenced pursuant to the second degree murder statute, but there is no indication that this is so. Rather, petitioner was given the most severe penalty available by law, which is also the penalty provided for second degree murder. But, because the Supreme Court did not indicate the statutory basis for imposing this penalty, we must consider that issue without the benefit of a Louisiana court's pronouncement on the problem.

onment too severe a penalty for first degree murder, for it saw fit to provide for it, at least with respect to adults, for the less serious crime of second degree murder. Accordingly, it provided a mandatory death penalty because of its judgment that the crime of first degree murder should be punished only by the most severe penalty available. If petitioner's contentions were accepted, and mere juvenile sanctions imposed, the anomalous result would be reached that juvenile sanctions must be imposed because the legislature thought first degree murder so serious that it provided only a mandatory death penalty, whereas life imprisonment could be imposed had the legislature thought the crime less serious and provided the alternative of life imprisonment.

It should also be noted that the legislature has belatedly responded to the problem posed here. On July 17, 1975, it revised LSA–R.S. § 13:1570 to read in relevant part:

Except as otherwise provided herein, the [juvenile] court shall have exclusive original jurisdiction in proceedings:

A. Concerning any child . . .

\* \* \* \* \* \*

(5) Who violates any law or ordinance, except a child who, after having become fifteen years of age, is charged with having committed a capital crime . . . provided that once such a child has been actually charged with a capital crime . . . the district court shall retain jurisdiction over his case, even though the child pleads guilty to, or is convicted of, a lesser included offense; and a plea to, or a conviction of, a lesser included offense shall not revest the juvenile court with jurisdiction of such a child.

Although the legislature's judgment when it enacted LSA–R.S. § 14:30 is controlling, and may differ from its present judgment as expressed in LSA–R.S. § 13:1570, this recent enactment confirms what is apparent for independent reasons.

"Courts have often added a sanction to those prescribed for an offense created by statute where the circumstances fairly indicated this would further the essential purpose of the enactment." *A. C. Frost & Co. v. Coeur D'Alene Mines Corp.*, 1941, 312 U.S. 38, 43, 61 S.Ct. 414, 417, 85 L.Ed. 500. Moreover,

[W]here [the legislature] has exhibited clearly the purpose to proscribe conduct within its power to make criminal and has not altogether omitted provision for penalty, every reasonable presumption attaches to the proscription to require the courts to make it effective in accord with the evident purpose. . . . The margin between the necessary and proper judicial function of construing statutes and that of filling gaps so large that doing so becomes essentially legislative, is necessarily one of degree.

*United States v. Evans*, 1948, 333 U.S. 483, 486–487, 68 S.Ct. 634, 636, 92 L.Ed. 823.

The legislature has expressed its will sufficiently. In providing the death penalty for first degree murder, and in providing for adult treatment of juveniles convicted of that crime, it sought to punish persons such as the petitioner to the full extent permitted by the Constitution. That legislative judgment should not be thwarted simply because it cannot be effected in full. Accordingly, LSA–R.S. § 14:30, as written at the time of this offense, supplies sufficient legislative authority for the imposition of life imprisonment on a juvenile convicted under its provisions and sentenced to death.

Hence, the petition is DENIED.