Dalton PREJEAN

v.

Frank C. BLACKBURN, et al.

Civ. A. No. 81–0632.

United States District Court,
W.D. Louisiana,
Monroe Division.

Aug. 5, 1983.

Thomas E. Guilbeau, Lafayette, La., John Charles Boger, Deborah Fins, New York City, Anthony G. Amsterdam, Stanford University Law School, Stanford, Cal., for plaintiff.

J. Nathan Stansbury, Dist. Atty., Lafayette, La., for defendants.

## OPINION

NAUMAN S. SCOTT, Chief Judge.

### I. BACKGROUND

Dalton Prejean, a 17 year old black male, was convicted by a jury in the Fourth Judicial District Court, Ouachita Parish, Louisiana, of first degree murder for the shooting death of Louisiana State Police Officer Donald Cleveland. At the sentencing phase of the trial, the jury found one statutory aggravating circumstance,[1] and after con-

---

1. The victim of the crime was a peace officer engaged in his lawful duties. La.C.Cr.P. art. 905.4(b).

sidering the mitigating circumstances, unanimously recommended the death penalty—a verdict binding upon the trial judge. See La.C.Cr.Pr. art. 905 et seq.

Prejean's conviction and sentence were appealed to and affirmed by the Louisiana Supreme Court. *State v. Prejean,* 379 So.2d 240 (La.1979), *rehearing denied* January 28, 1980. Petitioner then sought relief from the United States Supreme Court by writ of certiorari which was denied. *Prejean v. Louisiana,* 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119, *rehearing denied* 449 U.S. 1027, 101 S.Ct. 598, 66 L.Ed.2d 489 (1980).

Petitioner next sought post-conviction relief by filing an application for a writ of habeas corpus in the Fourth Judicial District Court, Ouachita Parish. After hearing on April 9, 1981, said application was denied. Thereafter petitioner filed an application for a stay of execution and for review of an application for post-conviction relief which were denied by the Louisiana Supreme Court. *State of Louisiana, ex rel. Prejean v. Blackburn,* 397 So.2d 517 (La. 1981).

Petitioner immediately sought a stay of execution and filed an application for writ of habeas corpus before this court. 28 U.S.C. §§ 2251, 2254. Considering the time constraints and the facial substantiality of the claims presented, we stayed the execution pending our determination of the merits. 28 U.S.C. § 2251. See *Rosenburg v. United States,* 346 U.S. 273, 73 S.Ct. 1152, 97 L.Ed. 1607 (1953) *(per curiam).* See also *Evans v. Bennett,* 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979); *Shaw v. Martin,* 613 F.2d 487 (4th Cir.1980).

Subsequently, petitioner filed a motion seeking abatement of our consideration of his Section 2254 motion, pending disposition by the United States Supreme Court of *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), alleging that the *Eddings* case presented a question of constitutional law, the answer to which would undoubtably pertain to the instant case. Due to the prerequisite of exhaustion of remedies found in 28 U.S.C. § 2254(b) and (c), we dismissed Prejean's application

for writ of habeas corpus without prejudice and ordered a temporary stay of execution, to expire on October 15, 1981, to afford Prejean an opportunity to present his unexhausted claim which was based on *Eddings* to the Louisiana Supreme Court. On October 13, 1981, we extended our temporary stay of execution until November 6, 1981.

Petitioner reapplied to the Louisiana Supreme Court for supervisory writs. The application was denied on November 27, 1981, and that court granted a stay order to permit Prejean to apply to Federal Court for further relief. *State ex rel. Prejean v. Blackburn,* 407 So.2d 1189 (La.1981).

Again considering the time constraints and the facial substantiality of petitioner's claims, we stayed the execution pending our determination on the merits. Petitioner's application for habeas corpus relief under Section 2254 is now before this court.

## II. STANDARD OF REVIEW

In *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the United States Supreme Court elucidated the review guidelines of the federal habeas court, under 28 U.S.C. § 2254(d). There is a presumption of correctness in a State court's factual findings unless one of the seven conditions specifically set forth in § 2254(d) is found to exist by the federal habeas court. See *Williams v. Blackburn,* 649 F.2d 1019 (5th Cir.1981); *Germany v. Estelle,* 639 F.2d 1301 (5th Cir.1981); *Thomas v. Estelle,* 582 F.2d 939 (5th Cir.1978). So long as there are "written findings, written opinion, or other reliable and adequately written indicia," the court's findings are sufficient. *Sumner v. Mata,* supra 449 U.S. at 546–47, 101 S.Ct. at 769, 66 L.Ed.2d at 730–31.

Petitioner has exhausted his State remedies regarding the many claims presented to us. In our review of the State court record, we have found that many of petitioner's claims have been factually determined, as evidenced by an opinion of the trial judge, written findings by the Louisiana Supreme Court, and findings by the

State court in its review application for post-conviction relief.[2] The petitioner's burden of proof is not as great where no written findings support a State court's habeas decision. For both categories of claims we have endeavored to thoroughly investigate the record of the case. However, our disposition of the latter group of issues necessarily entails a more independent degree of findings under *Sumner* and the language of § 2254(d). We then are guided by the dictates of *Jackson v. Virginia*, 443 U.S. ·307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Based upon the record and the nature of petitioner's claims, no evidentiary hearing at which testimony is introduced is necessary.[3]

### III. CLAIMS

Petitioner has raised eleven separate claims for us to consider: (1) the admission of gory photos, (2) the systematic exclusion by the prosecutor of prospective black jurors, (3) the exclusion from the jury venire of a certain socio-economic class, (4) the death qualification of the jury, (5) the exclusion of a prospective juror in violation of *Witherspoon*, (6) the illegality of the sentencing instructions, (7) the prospective rebuttal of mitigating circumstances, (8) the intentional racial discrimination in the imposition of the death sentence, (9) the limiting of mitigating circumstances, (10) the denial of due process in the affirmance of the death sentence, and, (11) the excessiveness and disproportionality of the death sentence. Due to either their factual or legal similarity, we have combined several of these claims in our discussion below.

 Prejean contends that his rights to a fair trial under the Sixth Amendment, as applied to the states through the Four-

teenth Amendment, and his rights to due process under the Fourteenth Amendment were violated by the introduction into evidence of two photos of the victim, alleged to be gruesome and inflammatory to the jury. The standard to be utilized by the Federal Court in a habeas corpus case in reviewing the state trial court's actions in admitting evidence was recently discussed by the Fifth Circuit in *Nettles v. Wainwright*, 677 F.2d 410 (5th Cir.1982):

"As a general rule, a federal court in a habeas corpus case will not review the trial court's actions in the admission of evidence. *Lisenba v. California*, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941); *Gebhart v. Beto*, 441 F.2d 319, 321 (5th Cir.1971). While it is true that an evidentiary ruling which deprives a state court defendant of fundamental fairness is cognizable on habeas corpus, see *Barnard v. Henderson*, 514 F.2d 744 (5th Cir. 1975), the federal court will make inquiry 'only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial.' *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976). The admission of prejudicial evidence justifies habeas corpus relief only if the evidence 'is material in the sense of a crucial, critical, highly significant factor.' *Hills*, 529 F.2d at 401 (quoting *Corpus v. Beto*, 469 F.2d 953, 956 (5th Cir.1972), *cert. denied* 414 U.S. 932, 94 S.Ct. 236, 38 L.Ed.2d 162 (1973))." *Id.* at 414–415.

 The prosecution introduced the photographs for the purpose of showing the exact location of the body after the shooting and the identity of the decedent.[4] The manner of the shooting and the decedent's identification as a police officer are relevant to the crime of first degree murder

---

**2.** Findings are included in the Transcript of the hearing which as part of the record may be used by the District Court to determine if there was a full hearing. *Thomas v. Beto*, 452 F.2d 1072 (5th Cir.1971).

**3.** Also, see *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978), in which claims similar to some of those presented by the petitioner here-

in were presented. The court found them to be of a legal nature only, and subsequently, there was no need for an evidentiary hearing on those claims.

**4.** The prosecutor showed Trooper Legendre the pictures in order for him to testify as to where the victim was found. Trial Transcript, p. 565.

with a sentence of death[5] and although these facts may have been able to be established by other means, we find that upon reviewing the photographs we can not conclude that the admission of the photographs constituted an abuse of discretion of the magnitude needed to deprive petitioner of a fair trial or due process.[6]

The next group of claims, numbers two through five in the above list, deal with alleged violations of petitioner's Sixth and Fourteenth Amendment rights allegedly occurring due to the jury's composition and/or the manner in which the jury was selected.

▮ Prejean alleges that at his trial the prosecutor, in a parish with alleged historical racial prejudice, used peremptory challenges to exclude all prospective black jurors resulting in petitioner's trial before an all white jury. This contention without more, is not sufficient to support a constitutional claim for habeas corpus relief. See generally *Huffman v. Wainwright,* 651 F.2d 347 (5th Cir.1981). However, under *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), followed by the Fifth Circuit in *United States v. McLaurin,* 557 F.2d 1064 (5th Cir.1977), if there is a showing that over a period of time the prosecutor used peremptory challenges for the systematic exclusion of blacks from jury service, then an equal protection claim is raised under the 14th Amendment.[7] The petitioner has had ample opportunity in the past to introduce the evidence needed to substantiate this claim, and has failed to do

so. At trial, Prejean objected to the jury panel but offered no evidence in support of his claim of systematic exclusion. Again on motion for new trial and at the hearing on postconviction relief, Prejean had an opportunity to substantiate his claim and failed to do so. In petitioner's memorandum before this court no evidence is offered that would support an inference of any constitutional violation. Conclusory allegations such as those in petitioner's memorandum do not state a basis for relief. See *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Easter v. Estelle,* 609 F.2d 756 (5th Cir.1980). We agree with the state courts that this contention is without merit.

▮ Prejean's second basis for relief in this group of claims is that his Sixth Amendment right to a fair and impartial jury drawn from a cross-section of the community was violated when the commissioners in charge of jury selection intentionally excluded all doctors and lawyers from the general venire. Under Louisiana Code of Criminal Procedure Article 532(9) a Motion to Quash is the proper method for challenging the composition of the jury venire. *State v. Ramos,* 390 So.2d 1262, 1263 (La. 1980), *rehearing denied,* Dec. 15, 1980; *State v. Durr,* 343 So.2d 1004 (La.1977). No Motion to Quash was filed on behalf of petitioner at trial. Due to principles of federalism and comity, a defendant's failure to follow this state procedure acts as a waiver of his right to raise a constitutional claim at a later federal proceeding[8] unless

---

**5.** La.R.S. 14:30(2) defines first degree murder as the killing of a human being where the offender has the specific intent to kill or to inflict great bodily harm upon a Fireman or Police Officer engaged in the performance of his lawful duties. As noted previously, one of the aggravated circumstances which can be found in order to consider imposition of the death sentence is that the victim was a Peace Officer engaged in his lawful duties. See n. 1, *supra.* The photos showed that it was evident Cleveland was a Police Officer and that he was dressed in full uniform.

**6.** A review of the record indicates that the overwhelming evidence presented by the prosecutor was the basis of the guilty verdict and the

imposition of the death sentence rather than any inflammatory effect the photographs may have had on the jury.

**7.** Prejean argues that while systematic exclusion of blacks through the use of peremptory challenges is one way to meet the *Swain* burden, the use of discriminatory practices generally throughout the parish is also sufficient. This contention is without merit.

**8.** This failure to object does not act as a waiver if the State does not raise the waiver issue, and addresses the issue directly on the merits. In this case, the State did raise the issue of waiver.

the petitioner shows there was cause for failing to utilize the proper state procedures and there was resulting prejudice affecting the outcome. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Bass v. Estelle,* 696 F.2d 1154 (5th Cir.1983); *Huffman v. Wainwright,* 651 F.2d 347 (5th Cir.1981).[9]

Petitioner's contention that "cause" in this case derives from his counsel's ineffectiveness in failing to investigate and raise the issue pretrial is without merit. The Fifth Circuit standard for constitutionally effective assistance of counsel is "not errorless counsel, not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir.1974). Having examined the performance of counsel and considering the totality of the circumstances and the entire record, we conclude that petitioner's representation was more than adequate to pass constitutional standards. In fact, counsel had previously filed a Motion to Quash the venire, alleging the same constitutional violation alleged here, but with different facts as to who had been allegedly unconstitutionally excluded from the general venire.[10] There was a change of venue, however, from Lafayette, Louisiana to Monroe, Louisiana, and subsequently a new jury venire. Counsel's previous challenge to the composition of the jury venire indicated his awareness as to the proper procedure for objecting to the jury panel. This court will not scrutinize counsel's decisions in choosing to pursue a particular course of action. Nor will we judge such experienced counsel by hindsight.[11] *Lovett v. Florida,* 627 F.2d 706 (5th Cir.1980). We

thus find there is no adequate cause for failing to object as required by state law.

Even if adequate cause for failing to object had been established, the second requirement for waiver would not have been established in that sufficient prejudice has not been shown. Under Louisiana Supreme Court Rule 25, the Supreme Court of Louisiana has found as a matter of law that it is in the public interest to exempt from jury duty such occupational classes as doctors and lawyers. There is an inadequate foundation to hold that these court mandated exemptions deprived this defendant of a fair trial. The record indicates an extensive voir dire by defense counsel, insuring the existence of a fair and impartial jury. The mere fact that two particular occupations were not represented on petitioner's jury did not deprive him of a fair trial.

There being no adequate cause for counsel's failure to object, and also no resulting prejudice, we find that petitioner's failure to object to the composition of the jury in accord with the proper state procedures, acted as a waiver of his right to assert the claim for federal habeas relief.

Next, petitioner alleges that the death qualification of his jury—that is, the process of excluding those jurors who could not under any circumstances vote for a death penalty because of religious or conscientious scruples—violates his right to a fair and impartial jury drawn from a cross-section of the community, as required by the Sixth and Fourteenth Amendments. The Fifth Circuit has held that "unalterable opposition to the death penalty is a legitimate disqualification and that the exclusion of such disqualified jurors does not violate the fair cross-section principle of the sixth

---

**9.** Petitioner's argument that the ordinary waiver rules of *Wainwright v. Sykes, supra,* do not apply in a capital case is without merit. In spite of petitioner's arguments, there is only one system of justice in this country and it does not change if an individual is charged with a capital crime. The difference is that there are added safeguards to be applied in the *sentencing phase* to insure that the sentence is imposed in accordance with constitutional requirements.

**10.** In the motion to quash the jury venire petitioner alleged that he was deprived of a fair and impartial jury because there were more men than women on the panel. See Trial Transcript, p. 109.

**11.** The record indicates defense counsel's trial experience, specifically ten years of general legal practice. Trial Transcript p. 187.

amendment." *Smith v. Balkcom,* 660 F.2d 573, 583 (5th Cir.1981), modified 671 F.2d 858 (5th Cir.1982), 677 F.2d 20 (5th Cir. 1982). To raise the same issue here is frivolous, and without merit.

▓ Finally, the last claim alleging violations of petitioner's Sixth and Fourteenth Amendment rights with respect to jury makeup, is that a prospective juror was excused for cause because of her general opposition to the death penalty in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *Witherspoon* and its progeny establish that a member of the venire may not be excused for cause if he expresses only a general objection to the death penalty. However, a prospective juror may be excused for cause if he states that he would automatically vote against the imposition of capital punishment; that is, that he would be unable to follow the law in assessing punishment. The trial transcript reveals that the prospective juror challenged, Eretha Taylor, voiced more than a general objection to the death penalty. Initially, the question addressed to the jury panel was:

> "With regard to the question of this being a capital offense, are there any of you that have scruples against capital punishment to the point where you would, under no circumstances, be able to find the defendant and impose that penalty, even if it were justified by the facts?"

Transcript, page 368.

When Eretha Taylor was called for the next panel she was asked about her beliefs concerning capital punishment with respect to the initial question posed to prospective jurors.

> "Q: O.K. Not at all?
>
> A: I don't believe I could do it.
>
> Q: Not at all?

> A: No sir."

Transcript, page 398.

▓ Taken into conjunction with the prosecutor's first question, in which the entire jury venire was present, the follow-up questions to Miss Taylor elicited responses that indicated her unequivocal opposition to the death penalty. See *Williams v. Maggio,* 679 F.2d 381 (5th Cir.1982). We, thus, find no violation of the *Witherspoon* rules and petitioner's claim is without merit.[12]

Petitioner's remaining six claims, claim numbers 6 through 11 outlined above, deal with the imposition of the death sentence.

Petitioner alleges violations of his Eighth and Fourteenth Amendment rights with respect to the court's instructions to the jury. Specifically, Prejean contends a constitutional flaw resulted from the trial judge's failure to clearly communicate in his sentencing instructions the role of mitigating factors, and the requirement to return a life sentence if there was not a unanimous finding for the death sentence.

▓ The trial judge must clearly instruct the jury about mitigating circumstances as well as the option to recommend against death. *Spivey v. Zant,* 661 F.2d 464, 470 (5th Cir.1981); *Chenault v. Stynchcombe,* 581 F.2d 444, 448 (5th Cir.1978). In order to determine whether a defendant has been accorded his constitutional rights, the trial court's instructions are accorded reasonable interpretation. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Washington v. Watkins,* 655 F.2d 1346, 1369 (5th Cir.1981). This interpretation must not be accomplished in piecemeal fashion, but rather by examining the entire charge to determine its adequacy. *Davis v. McAllister,* 631 F.2d 1256 (5th Cir. 1980). Furthermore, a deficiency, if found, must have violated some right guaranteed by the constitution, and it must so infect

---

**12.** Petitioner's reliance on *Granviel v. Estelle,* 655 F.2d 673 (5th Cir.1981) is misplaced. There the questions asked by the prosecutor were not the type to elicit unequivocal responses:

> "Q: The defendant in this case is charged with capital murder. There are only two

punishments for the offense of capital murder and that is either death or life in the penitentiary. Now do you have any conscientious scruples against the infliction of the death penalty as a punishment for crime?"

the entire trial that a resulting conviction or sentence violates due process. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

The trial judge clearly instructed the jury pursuant to Louisiana Code of Criminal Procedure Art. 905 that if aggravating circumstances were found, all mitigating factors must be considered before recommending the sentence of death:

> "Even if you find the existence of an aggravating circumstance, you must also consider any mitigating circumstances before you decide a sentence of death should be imposed. The law specifically lists certain mitigating circumstances."

Trial transcript, page 858.

The trial judge then proceeded to outline the mitigating circumstances which are provided for by statute.[13]

Petitioner's allegation that the trial judge failed to inform the jury that if they should fail to agree on a death sentence then life imprisonment without probability of parole would be imposed is not true. The trial judge instructed the jury:

> "B. Before you decide that a sentence of death should be imposed you must unanimously find, beyond a reasonable doubt, that at least one statutory aggravating circumstance exists.
>
> C. If you find, beyond a reasonable doubt that any of the statutory aggravating circumstances existed you are authorized to consider imposing a sentence of death. If you do not unanimously find beyond a reasonable doubt that any of the statutory aggravating circumstances

existed, then life imprisonment without benefit of probation, parole, or suspension of sentence is the only sentence that may be imposed."

Transcript, page 857. Later in the instructions the trial judge explained the verdict forms:

> "The first forms reads—the first form of the verdict reads:
>
> 'Having found the below listed statutory aggravating circumstances or circumstances beyond a reasonable doubt and, after consideration of the mitigating circumstances offered, the jury recommends the the defendant be sentenced to death.'
>
> In the event that you unanimously decide the death penalty should be imposed, a space is provided to write out the statutory aggravating circumstance or circumstances you unanimously find to exist. The Foreperson must sign the form.
>
> The second form of the verdict reads:
>
> 'The jury unanimously recommends that the defendant be sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.'
>
> If the jury decides that a life sentence without benefit of probation, parole or suspension of sentence should be imposed, the Foreperson need only sign that form of verdict. No listing of aggravating or mitigating circumstances is required."

Transcript, pages 859–60.

█ Taken in their entirety, the instructions and verdict forms, as explained by the trial judge, informed the jurors that failure to reach a unanimous decision for the death

---

**13.** The judge instructed the jury, in accordance with Louisiana statutory law, that the following were mitigating circumstances:

> "(a) the offender has no significant prior history of criminal activity;
> (b) the offense was committed while the offender was under the influence of extreme mental or emotional disturbance;
> (c) the offense was committed while the offender was under the influence or under the domination of another person;
> (d) the offense was committed under circumstances which the offender reasonably believed to provide a moral justification or extenuation for his conduct;

> (e) at the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication;
> (f) the youth of the offender at the time of the offense;
> (g) the offender was a principal whose participation was relatively minor;
> (h) any other relevant mitigating circumstance."

See Trial Transcript, p. 858; Louisiana Code of Criminal Procedure, art. 905.

In *Spivey, supra,* the instructions failed to mention factors to be considered as mitigating. Hence, it is inapposite.

penalty would result in a life sentence, without benefit of Probation, parole or suspension of sentence. See *Baldwin v. Blackburn,* 653 F.2d 942 (5th Cir.1981), *cert. denied* 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475, *rehearing denied* 457 U.S. 1112, 102 S.Ct. 2918, 73 L.Ed.2d 1323 (1982).

 Petitioner's allegation that the jury charges, during the sentencing phase of the capital case, must contain a charge that the aggravating circumstances must outweigh the mitigating circumstances, beyond a reasonable doubt, is ill-founded, *Ford v. Strickland,* 676 F.2d 434 (11th Cir.1982):

> "While the existence of an aggravating or mitigating circumstance is a fact susceptible of proof under the reasonable doubt or preponderance standard, . . . the relative *weight* is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party."

*Id.* at 442 (emphasis in original). See also *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Gray v. Lucas,* 677 F.2d 1086 (5th Cir.1982).

Petitioner also calls into question the constitutionality of the statute because it fails to provide the guidelines requested above, and because the Louisiana Supreme Court has not instituted procedures to cure the defects. We find this contention to be without merit. *Zant, supra; Blackburn, supra;* and *Gray, supra.*

 Petitioner next alleges error by the trial court in allowing the prosecution, during the penalty phase of the trial, to put on evidence prospectively rebutting mitigating factors, because this was not the correct order of procedure. Louisiana Code of Criminal Procedure Art. 905.2 provides, in pertinent part, that "Evidence relative to aggravating or mitigating circumstances shall be relevant irrespective of whether the defendant places his character in issue" and that "The jury may consider any evidence offered at the trial on the issue of guilt." The statute clearly indicates the

relevancy of aggravating and mitigating circumstances, in addition to the ability of the jury to consider evidence introduced at the guilt determination stage. Consequently, it was permissible for the prosecutor, at the penalty phase, to offer evidence to rebut the intoxication defense, which had been raised at the trial stage. The order in which evidence is admitted is within the discretion of the trial court. This discretion will not be disturbed unless there is a showing of extraordinary circumstances. *United States v. Leaman,* 546 F.2d 148 (5th Cir. 1977). Considering the record as a whole and the Louisiana Code of Criminal Procedure Article 905.2, we cannot find any extraordinary circumstances which would justify our intervention into the matter, and, thus, this claim is without merit.

Petitioner alleges intentional racial discrimination in the imposition of the death penalty in violation of the Eighth and Fourteenth Amendments.

 Nothing in petitioner's brief suggests that he is going beyond conclusory allegations of racial discrimination in the imposition of the death penalty. The statistics offered to show discriminatory application of the death penalty would purport to demonstrate that defendants who murdered whites have received the death penalty when other defendants who have murdered blacks have received a life sentence. The Fifth Circuit has made it clear that we need must venture on a case by case comparison to ascertain the truth or falsity of petitioner's claim. "We need not repeat the myriad of difficult problems, legal or otherwise, generated by such federal court intrusion into the substantive decision making of the sentencing process which is reserved to the . . . state courts . . . ." *Spinkellink v. Wainwright, supra.* Consequently, "if a state follows a properly drawn statute in imposing the death penalty, then the arbitrariness and capriciousness—and therefore the racial discrimination—condemned in *Furman* have been conclusively removed." Id. at 613–14.[14] Louisiana Code of Criminal

---

**14.** See *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 346 (1972). See also *Jurek*

*v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Woodson v. North Caroli-*

Procedure Articles 905 et seq., require the jury to find at least one aggravating factor before it may impose a death sentence. As mentioned above, it must also consider factors in mitigation. This channeling of discretion prevents any freakish imposition of the death penalty. In addition, the automatic Louisiana Supreme Court review of each sentence, to determine if it is as excessive, in relation to similar crimes, is a further safeguard against an arbitrary imposition of a death sentence based on nothing more than race. Just a resulting disproportionate impact on blacks, therefore, does not raise an equal protection claim. Id. See also generally *Washington v. Davis,* 426 U.S. 229, 99 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

The statistical data that petitioner intends to rely on, to show discriminatory intent, are similar to those proffered in *Smith v. Balkcom, supra.* Nothing in petitioner's brief suggests that the evidence he would introduce would be more probative than that in *Smith.* The *Smith* court's conclusion that Smith did not consider "countless racially neutral variables" which led to its finding of unsupported assumptions, applies equally to the case at bar. The mere conclusory allegation in petitioner's brief is not the type of evidence of racially disproportional *impact* which would compel us to infer racially discriminatory intent.

■ For all of these reasons we find that petitioner was not the subject of racial discrimination in the imposition of the death penalty violative of the Eighth and Fourteenth Amendments.

■ Petitioner next alleges that the Louisiana Supreme Court considered only that mitigating evidence which would excuse criminal behavior as a matter of law in violation of the Eighth and Fourteenth Amendments as defined by the courts in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In *Eddings,* the United

States Supreme Court held that the sentencing authority could not restrict its consideration of mitigating circumstances to only those that create a legal excuse.

In the case at bar, the jury, which was the sentencing authority, was instructed to consider specific mitigating circumstances as enumerated in Louisiana Code of Criminal Procedure Article 905.5 as well as "any other relevant mitigating circumstance." Transcript, page 859. Furthermore, the jury was given a written list of the mitigating circumstances, as listed in Louisiana Code of Criminal Procedure Art. 905.5. Subpart (h) of this article reads "Any other relevant mitigating circumstance." Consequently, this is not a case where the sentencer was restricted only to certain delineated mitigating circumstances upon which to impose a death sentence. See *Lockett, supra.* Also, this is not a situation, as in *Eddings,* where the sentencing authority did not consider mitigating evidence which would not excuse criminal behavior as a matter of law. The jury was instructed to consider *all* possible mitigating circumstances in the penalty phase of the trial. Even though the defense was unable to persuade the jury on the intoxication defense, the jury was in no way precluded from considering the intoxication evidence in mitigation of Prejean's actions.

■ The Louisiana Supreme Court was not the sentencer but only a reviewer of the sentence to determine if it was imposed according to the statutory procedures and was not imposed in an arbitrary or capricious manner or as the result of passion or prejudice. Louisiana Code of Criminal Procedure Article 905.9.1 requires that the Louisiana Supreme Court review every death sentence to determine if it is excessive. The reviewing court ascertains whether or not the sentence resulted from prejudice or passion, whether the evidence supported a finding of an aggravating circumstance, and also compares similar cases, including

na, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,*

428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).

cases with similar mitigating circumstances. Because the function of the Supreme Court is that of review, and not imposition of sentence, it need not make an independent determination of the mitigating circumstances. It must only decide if the sentencing authority adhered to the statutory guidelines in imposing sentence and whether or not it is excessive. See Louisiana Code of Criminal Procedure Art. 905.9.1; *Ford, supra;* and *Spinkellink, supra.* The Louisiana Supreme Court does not impose the sentence. The *Lockett/Eddings* rule applies to sentencing authorities. As a result, petitioner's argument must fail.

Petitioner next alleges that in its review of the propriety of the death sentence, the Louisiana Supreme Court considered evidence outside the record, in violation of the Eighth and Fourteenth Amendments.[15] The trial judge had deemed inadmissable evidence of a prior offense committed by the petitioner while a juvenile, which had not resulted in a conviction but in an adjudication of delinquency. Since the Louisiana statute properly confines evidence of prior criminal activity to actual conviction the judge precluded any mention of the prior offense at trial. The offense was part of the secret pre-sentence report which was provided to the trial judge and which was submitted under seal to the Louisiana Supreme Court in its review of the matter.

The Louisiana Supreme Court's opinion contains a detailed discussion of petitioner's past history. As part of his history, the Louisiana Supreme Court mentions the offense and discusses the psychiatric evaluations of petitioner which resulted from the court procedures for the offense. *State v. Prejean, supra.*

The imposition of sentence and subsequent review are two distinct phases of a capital trial. Petitioner's allegation relates to the review phase. Material outside the record can have no effect in the imposition of sentence. *Brown v. Wainwright,* 392 So.2d 1327 (La.1981); *Ford v. Strickland, supra.*[16] The Louisiana Supreme Court followed the review guidelines set out in Louisiana Code of Criminal Procedure Article 905.9.1 in reviewing and affirming the death sentence. Petitioner does not substantiate his claim that the sentence was affirmed through the use of outside evidence. Mere mention by the Louisiana Supreme Court of this aspect of petitioner's history does not indicate that the Supreme Court relied upon this fact to affirm the death sentence which was imposed by a jury which had no evidence as to the commission of the offense. The overwhelming evidence is that the death sentence was imposed and affirmed due to the cold blooded manner in which Prejean killed

**15.** The Supreme Court mentioned petitioner's juvenile record.

**16.** In *Ford v. Strickland, supra,* the Fifth Circuit stated:

"We reject the contention both generally and specifically as made for Ford. The function of the Supreme Court of Florida in these cases is to review sentences for procedural regularity and proportionality. The court does not 'impose' sentence, and for that reason there cannot exist a due process violation under *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1980). As the Florida Supreme Court aptly stated:
The record of each proceeding, and precedent, necessarily frame our determinations in sentence review. Our opinions, of course, then expound our analysis. Factors or information outside the record play no part in our sentence review role. Indeed, our role is neither more nor less, but precisely the same as that employed by the United States Su-

preme Court in its review of capital punishment cases. Illustrative of the Court's exercise of the review function is *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

\* \* \* \* \* \*

It is evident, once our dual roles in the capital punishment scheme are fully appreciated, that non-record information we may have seen even though never presented to or considered by the judge, the jury, or counsel, plays no role in capital sentence 'review'. That fact is obviously appreciated by the United States Supreme Court, for it very carefully differentiated the sentence 'review' process of appellate courts from the sentence 'imposition' function of trial judges in *Proffitt* and *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)."
*Id.* at 444. In Louisiana, as in Florida, the Supreme Court only reviews sentences; it does not impose the sentence.

a peace officer engaged in his lawful duties. Petitioner's claim is without merit.[17]

Finally, petitioner presents an Eighth Amendment claim, alleging that the imposition of his death sentence was excessive and disproportionate.

Petitioner first contends that death is an excessive and inappropriate punishment *per se* when imposed on a person under the age of 18. Although the Supreme Court granted certiorari in *Eddings* to consider the issue of whether imposing the death penalty on a person under 18 years of age was unconstitutional, this matter was not addressed in the final opinion. *Eddings v. Oklahoma, supra.* Petitioner appears to rely on Civil Statutes which make him a "major" at 18 years of age.

We first note the differences in the *Eddings* case and in Prejean's situation. The petitioner in *Eddings* was 16 years of age and was considered a juvenile when he committed the murder; he was subsequently certified to stand trial as an adult. See Oklahoma Statutes Annotated, Title 10, § 1112. Under Louisiana law, however, Prejean did not have to be certified as an adult. He was 17 years of age and an adult for purposes of criminal court jurisdiction. Art. 5, § 19, La. Constitution of 1974; LSA–R.S. 13:1570; *State ex rel. Coco*, 363 So.2d 207 (La.1978). Louisiana Revised Statute 14:30 constitutes a legislative classification that the crime of murder, in certain instances, is a capital offense. *State v. Whatley*, 320 So.2d 123 (La.1975), *rehearing denied*, 1975. This classification, along with the policy of adult treatment of juveniles

over a certain age convicted of that crime, indicates a legislative intent to punish persons such as petitioner, to the full extent permitted by the Constitution. *Smith v. Johnson*, 458 F.Supp. 289, 296 (E.D.La.1977). "Therefore in assessing a punishment selected by a democratically elected legislature against the Constitutional measure, we presume its validity." *Gregg v. Georgia, supra*, 428 U.S. at 174, 96 S.Ct. at 2925, 49 L.Ed.2d at 876. See also *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). We must also consider the importance of the prohibition on federal courts from imposing their own subjective preferences upon the judgment of the state and the community, as enunciated in *Gregg, supra*, and *Coker, supra*. To compare the severity of a punishment with the evidence proffered by the petitioner with regard to age we would be succumbing to reliance on our own subjective opinion as to the propriety of the punishment for the petitioner in question. *Martin v. Blackburn*, 521 F.Supp. 685 (E.D.La.1981). Traditionally, the primary purpose of the Eighth Amendment's cruel and unusual punishment provision has been directed towards the *kind* of punishment or on the severity of the punishment in relation to the type of the crime. See *Solem v. Helm*, —— U.S. ——, ——, 103 S.Ct. 3001, 3005, 77 L.Ed.2d 637; *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).[18] It generally is not directed to the propriety of the punishment on a particular person, as long as it is not imposed as the result of bias or passion. Through proper sentencing and review procedures any bias and prejudice has been

---

**17.** It would have been incredible for the probation officer to omit known past criminal behavior of petitioner, including his arrest for the killing of Doucet. This occurrence accounts for his incarceration in the Louisiana Training Institute and his subsequent psychiatric examinations. This information had been available to the trial court, and was necessary for the Louisiana Supreme Court's review of petitioner's sentence. That reviewing authority was certainly aware of the fact that this information was not in evidence, was not considered by the jury in its deliberations on the sentence, and therefore, could not be considered by that authority in reviewing the sentence.

**18.** In *Solem*, the Supreme Court enumerated three objective criteria to aid a court in its review of a sentence under the Eighth Amendment: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem, supra* —— U.S. at ——, 103 S.Ct. at 3010. None of these factors lend support to petitioner's contention that the death penalty is *per se* unconstitutional when imposed against a person who was under the age of eighteen years at the time of the offense.

removed here. This petitioner's Eighth Amendment claim that the death penalty is unconstitutional per se as applied to individuals under 18 years of age is without merit.[19]

■ Petitioner further argues that whether or not death is per se excessive and disproportionate when inflicted on a defendant who was under the age of 18 at the time of the offense, it is excessive and disproportionate in this case due to improper review of petitioner's case by the Louisiana Supreme Court. The purpose of review by the supreme court is to make sure that death sentences are being imposed fairly, rationally, and without discrimination throughout the state. *Proffitt v. Florida,* 428 U.S. 242, 260, 96 S.Ct. 2960, 2970, 49 L.Ed.2d 913 (1976).

■ Louisiana Code of Criminal Procedure Article 905.9.1 requires the Louisiana Supreme Court to review all first degree murder cases within the same district being reviewed. The Louisiana Supreme Court considered the relevant first degree murder convictions in the district where the offense occurred, and where the trial was held. We cannot conclude that this review violated any Constitutional prohibition. *Williams v. Maggio,* 679 F.2d 381, 394–95 (5th Cir.1982) (*en banc*).

For the foregoing reasons, petitioner's application for habeas corpus relief, pursuant to 28 U.S.C. § 2254, is hereby denied, and it is hereby ordered that the stay of execution previously rendered by this Court expires on Sept. 1st, 1983 at 10:00 A.M. o'clock.

---

**19.** Youth is specifically mentioned by the trial judge as a mitigating factor under Louisiana Code of Criminal Procedure, art. 905.5(f).